UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JULIETTE KAWEESA<br># A 75 835-579 | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civ. No. 04-10513-WGY |
| | ) | |
| JOHN D. ASHCROFT, Attorney General;<br>BRUCE CHADBOURNE, Interim<br>Field Office Director for Detention and<br>Removal, Boston Field Office, Bureau of<br>Immigration and Customs Enforcement;<br>KATHLEEN M. DENNEHY, Acting<br>Commissioner, Massachusetts Dep't of<br>Correction, and the Bureau of Immigration<br>and Customs Enforcement (BICE) | ) | |
| | ) | |
| | ) | Petition for Writ of Habeas Corpus<br>and Emergency Request for<br>Preliminary Injunction<br>Staying Removal |
| Respondents, | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS AND EMERGENCY REQUEST FOR PRELIMINARY INJUNCTION STAYING REMOVAL

Petitioner Juliette Kaweesa is scheduled to be removed to Uganda on Wednesday, April 21, 2004, where she fears persecution, torture, and death.   Ms. Kaweesa was ordered removed *in absentia* on May 13, 1999 because she showed up several days late for her master calendar hearing, having misremembered the date.  New medical evidence demonstrates that Ms. Kaweesa suffers from Post Traumatic Stress Disorder (PTSD) resulting from the torture she endured in Uganda, and that this illness

likely contributed to her misremembering the date of her hearing. See Attached Exhibit ("Ex.") 2.1. New high-level human rights documents, together with an expert affidavit, show that the Ugandan government is detaining, torturing, and "disappearing" people like Ms. Kaweesa with startling dispatch, efficiency, and purpose. See Exs. 2.2, 2.3, 2.4. New evidence also indicates that Ms. Kaweesa herself was tortured and suffered past persecution, and that, in light of recent attacks against her son, she would be in extreme danger if she returned to Uganda, despite the passage of time. See Ex. 2.4, 2.5. Accordingly, Ms. Kaweesa respectfully requests that this Court issue a preliminary injunction prohibiting respondents from removing her until the Board of Immigration Appeals (BIA) has had the opportunity to review this new evidence, which is currently before the BIA in an Emergency Motion to Reopen, filed April 15, 2004. See Ex. 2.

At stake in this case are fundamental questions of due process. Under what circumstances can an individual be returned to the country she fled without a hearing on the merits of her asylum and Torture Convention claims? What are the minimal requirements of reasoned decision-making by an administrative body when fundamental freedoms are at stake? When does *refoulment* of a refugee violate substantive due process under the state-created danger doctrine? Because Ms. Kaweesa raises purely legal and constitutional challenges to the BIA's decisions, this court has *habeas* jurisdiction to hear her asylum, withholding of removal, and Torture Convention claims. The bases for jurisdiction are discussed more fully below.

## FACTS AND PROCEDURAL HISTORY

Ms. Kaweesa served as a Christian minister in Uganda. See Exs. 8, 10. She worked mainly with women and children and was well known in Kampala for her

preaching and music ministry. Id.; see also Ex. 2.6. She often traveled with a portable microphone to preach and sing and would lead prayer groups. Id. She became involved with a group called Human Rights Africa because they promoted respect for women, a message she shared with the women she spoke to through her ministry. Id.; see also Ex. 3, Ms. Kaweesa's *pro se* Application for Asylum (I-589), dated October 28, 1997.

Ms. Kaweesa's husband, Stephen Kaweesa, was the pastor of the Heritage Revived Church in Uganda until he was taken away from their home by government security officers in 1994. Id. He was never heard from again and is presumed dead. Ms. Kawessa believes that her husband was involved in a rebel freedom movement or opposition party. Id. She also suspects that her brother was involved in such a movement. Id.

Soon after her husband was taken away and disappeared, Ms. Kaweesa was detained by government security forces while she was about to speak at one of her church's "Crusades." Id. Men in military uniforms took her to military barracks outside Kampala, where she was detained, beaten, kicked, and raped by several different men. Id. She escaped detention and entered the United States on August 2, 1994 on a B-2 visa. Id. She filed her application for asylum *pro se.* Id. Her case was referred to an Immigration Judge for lack of detail. See Ex. 4, Referral Notice, dated February 22, 1999.

Ms. Kaweesa was sent a notice that her Master Calendar hearing was scheduled for May 13, 1999 but misremembered the date as May 17, 1999. See Exs. 8, 10. When she realized her mistake, she went to the Immigration Court and asked to speak to the Judge. The clerk told her that she could not speak to the Judge but that she could file a

3

Motion to Reopen. She submitted a handwritten Motion to Reopen on May 19, 1999 and later hired an attorney to help her supplement her Motion to Reopen and eventually appeal the denial of her motion to the BIA. See Ex. 11, Motion to Reopen dated May 19, 1999; see also Ex. 6, Brief. of the Respondent to the Board of Immigration Appeals, dated September 17, 1999, at 2 ("On June 9, 1999, Ms. Kaweesa, through her counsel, supplemented her Motion to Reopen with her affidavit."). *The Immigration Service did not oppose Ms. Kaweesa's motion to reopen.* Id.; see also Ex. 5, June 23, 1999 Decision of the Immigration Judge ("[T]he Service will be deemed unopposed.")

The Immigration Judge denied her motion on June 23, 1999, stating:

> "Although the respondent's error is not incomprehensible, she has failed to demonstrate that exceptional circumstances beyond her control prevented her from attending these proceedings. The respondent could have easily contacted the Court to verify her hearing date to avoid her dilemma."

Id.

The BIA affirmed the denial of her motion to reopen without an opinion on May 6, 2002. See Ex. 7. Although neither Ms. Kaweesa nor her attorneys realized it at the time she missed her hearing, there is strong evidence to suggest that Ms. Kaweesa was suffering from Post Traumatic Stress Disorder (PTSD) and depression (Major Depressive Disorder or MDD) – medical conditions which "frequently interfere with memory." See Ex. 2.1 at ¶ 33. This evidence is discussed fully in Ms. Kaweesa's Emergency Motion to Reopen before the BIA, filed April 15, 2003. See Ex. 2.

In 2001, Ms. Kaweesa learned that her son Fred Sempijja had been badly beaten in Uganda, suffering injuries that left him hospitalized. See Motion to Reopen Removal Proceedings and to Stay Removal, dated July 25, 2003 and

4

supporting exhibits. Fred informed her that several plainclothes men driving

army trucks had come to the house looking for her. Id. When he said he didn't

know where she was, they began to beat him. Id. Since that time, Fred has been

in hiding due to his fear that he will be killed on account of his relationship to Ms.

Kaweesa. Fred's Declaration explaining what happened constitutes previously

unavailable evidence of worsening country conditions. See Ex. 4.

On November 12, 2003, the BIA denied Ms. Kaweesa's motion to reopen in a

one- and- one- half-page opinion. See Ex. 9. After setting forth the procedural history,

the BIA noted:

> [T]he respondent's motion fails to make a *prima facie* showing of eligibility for
> the requested form of relief. In a declaration appended to her motion, the
> respondent alleges that sometime in 2001 her son was allegedly beaten by
> Ugandan security agents who were supposedly looking for her. The respondent
> does not explain why she waited nearly one year after the Board's decision and
> nearly two years after the alleged event to file her motion alleging changed
> country conditions. Further, while she submitted a photograph of her son
> showing what may be a scar on his head, we have no medical reports, police
> reports, or even an affidavit from him explaining how his injuries were alleged
> sustained. The respondent maintains that she was released by Ugandan
> authorities in 1994 and allowed to travel to the United States to attend a religious
> conference. *However, she fails to explain why anyone would still be interested in
> her after nearly a ten-year absence.*

Id. (emphasis added). This decision failed to address – or even mention -- Ms.

Kaweesa's Torture Convention claim. Nor did it address past persecution as a basis for

granting asylum, focusing instead exclusively on the risk of future harm.

Ms. Kaweesa has been in the physical custody of the Department of Homeland

Security since June 2003. Id. Undersigned counsel accepted her case on March 2, 2004.

Ms. Kaweesa is currently detained at Bristol Country House of Corrections in North

Dartmouth, Massachusetts.

On April 15, 2004, Ms. Kaweesa filed an Emergency Motion to Reopen, Rescind *In Absentia* Removal Order, and Stay Removal with the BIA. This motion contained new evidence, described below, which speaks to: a) the validity of her past persecution claim, b) the likelihood that she will be persecuted or tortured upon her return, c) the reasons she will be persecuted upon her return, d) the reasons why she missed her master calendar hearing, and e) the reasons why she did not bring her claims more quickly. The new evidence includes:

* Affidavit from Dr. Michael Alan Grodin, Director of the Law, Medicine, Ethics and Human Rights Program and Professor of Psychiatry, Health Law, and Socio-Medical Sciences and Community Medicine at the Boston University Schools of Medicine and Public Health, dated April 12, 2004 (attached hereto as Exhibit 1).

* Recently- released new country conditions research, including a 76-page Human Rights Watch report, entitled "State of Pain: Torture in Uganda," dated March 26, 2004 and the 2003 U.S. State Department Country Conditions Report on Uganda, released February 25, 2004 (attached hereto as Exhibits 2 and 3).

* Affidavit of Dr. Douglas A. Feldman, Tenured Professor of Anthropology at SUNY Brockport and an Africanist specialist, dated April 12, 2004 (attached hereto as Exhibit 4); and

* Declaration of Fred Sempijja, Ms. Kaweesa's adult son in Uganda, received April 13, 2004 (attached hereto as Exhibit 5).

This previously unavailable and undiscoverable material evidence --taken in conjunction with the evidence already in the record -- demonstrates Ms. Kaweesa's *prima facie* eligibility for relief under asylum law, withholding of removal, and the Torture Convention. This evidence also shows that Ms. Kaweesa deserves to have her claims heard on the merits before she is removed to a country where – based on past persecution and changed country conditions -- she is convinced she will be tortured and killed. For a full discussion of the significance of this evidence and her likelihood of prevailing before the BIA, please see Ms. Kaweesa's April 15, 2004 Motion to Reopen. (Ex. 2).

On April 15, 2004, Ms. Kaweesa also formally requested an administrative stay to Mr. Bruce Chadbourne, the District Director of the New England District Detention and Removal Office of BICE. She has received no response on the merits to this request. [1] See Ex. 12.

A stay pending resolution of the Motion to Reopen before the BIA is necessary to prevent Ms. Kaweesa's imminent removal and to allow her to present her asylum, withholding and CAT claims in accordance with due process. Ms. Kaweesa repeatedly expresses her fear that because of what she suffered in Uganda and what happened to her son, Fred, the Ugandan authorities have not "forgotten" about her, despite the passage of time. She repeatedly states that as sad as immigration detention is, she would rather stay in jail "forever" than be deported to Uganda.

## JURISDICTION

This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction under 28 U.S.C. § 2241, art. I § 9, cl. 2 of the United presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. Petitioner's jurisdictional arguments are briefed more fully below.

---

[1] On April 15, 2004, undersigned counsel received a call from Officer O'Malley from ICE who informed her that due to a failure to "fee in" the filing fee check attached to Ms. Kaweesa's administrative request for a stay, ICE is unable to review the request. Due to the timing issues in this case, counsel arranged to "fee in" the filing fee in person first thing Monday morning, April 19, 2004.

## VENUE

Venue lies in the District of Massachusetts because Ms. Kaweesa is currently detained at the Bristol County House of Corrections in North Dartmouth, Massachusetts. Venue in the District of Massachusetts is also proper because Petitioner is in the custody of Respondent Bruce Chadbourne, Interim Field Office Director of this District. 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

Petitioner has exhausted her administrative remedies to the extent required by law, and her only remedy is by way of this judicial action. On April 15, 2004, a stay of removal from both the BIA (see Ex. 2) and the respondent Bureau of Customs and Immigration Enforcement (BICE). See Ex. 12. It is unlikely that either entity will adjudicate the stay request before Ms. Kaweesa's April 21, 2004 deportation date.

## ARGUMENT

I.    THIS COURT HAS *HABEAS* JURISDICTION OVER PETITIONER'S CLAIMS, WHICH ARE VALID AND WARRANT RELIEF

This court has jurisdiction to adjudicate Ms. Kaweesa's habeas corpus petition for the following reasons. Because the jurisdictional grounds are intertwined with the claims themselves, jurisdiction and merits are discussed together.

**A.    Habeas Corpus Jurisdiction Under 28 U.S.C. §2241 Exists Because the BIA Committed Legal and Constitutional Error When It Neglected to Consider the Petitioner for Relief under the Convention Against Torture.**

The Supreme Court has held that habeas corpus jurisdiction under 28 U.S.C. §2241 remains available for collateral challenges of final orders of removal for claims concerning "errors of law and erroneous interpretation of statutes." See INS v. St. Cyr, 533 U.S. 289, 302 (2001). Habeas corpus review also encompasses claims that constitutional rights have been violated. Id.; St. Fort v. Ashcroft, 329 F. 3d 191, 203 (1st Cir. 2003). A noncitizen may also raise on habeas the refusal of the agency to even consider him for a certain form of relief. Id. at 203 (holding that district courts have jurisdiction under the general habeas statute to consider claims arising under the Convention against Torture); see also Sousa v. INS, 226 F.3d 28, 35 (1st Cir. 2000).

Petitioner is *prima facie* eligible for withholding of removal under the Torture Convention and so claimed in her motion to reopen. See Ex. 8. Yet, the BIA failed to mention, much less analyze, this claim. See Ex. 9. While there is some overlap in the elements of an asylum and Torture Convention claim, they are distinct causes of action with distinct legal requirements. For instance, the there is no nexus ("on account of") requirement for Torture Convention claims, and no one-year filing deadline. Most significantly, withholding under the Torture Convention – unlike asylum – is *mandatory* if the applicant meets the standards.

It is uncertain from the few factors recited in the BIA's opinion whether its reasons for denying Ms. Kaweesa's asylum claim would pertain to her Torture Convention claim as well. For instance, the BIA put great weight on Ms. Kaweesa's delay – a discretionary factor since motions to reopen for new evidence are not subject to

time deadlines – but as noted above, withholding under the Torture Convention is mandatory when the legal standards are met. The BIA also seemed troubled by *why* the government of Uganda would still be looking for her after all these years – a concern that speaks more to asylum law's nexus requirement than to the Torture Convention.

Most importantly, however, it is impossible to know for certain from the BIA's opinion whether Ms. Kaweesa was prejudiced by this oversight. For instance, it is not possible to know whether the BIA took into account the factors it was supposed to in adjudicating a claim under the Torture Convention. See 8 C.F.R. § 208. 16(c)(3) ("In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be torture; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal"). Cf. Haoud v.Ashcroft, 350 F. 3d. 201, 207 (1st Cir. 2003) (holding, in case involving Board's affirmance without opinion of a denial of asylum, that "[w]ithout an explanation for the reasons for the decision, we cannot determine whether the Board – applying the proper standards under [the regulations] – adequately and correction evaluated each of the criteria.") The BIA's decision provides no evidence that it took these factors into consideration, and Ms. Kaweesa should not be asked to accept as a matter of faith that her claim was, in fact, considered. The BIA's failure to consider the petitioner's eligibility for a mandatory form of relief is in violation of the petitioner's statutory right and

constitutes a legal error which gives rise to the court's habeas corpus jurisdiction. The Court also has habeas corpus jurisdiction under 28 USC §2241 because the BIA's failure to consider her Torture Convention claim was a violation of procedural due process.[2]

**B.    Habeas Corpus Jurisdiction Under 28 U.S.C. §2241 Exists Because the BIA Committed Legal Error When It Neglected to Address the Issue of Petitioner's Past Persecution**

The BIA similarly failed to address the issue of Ms. Kaweesa's past persecution. Instead, it focused exclusively on the risk of future harm, concluding that it is unlikely that Ms. Kaweesa would be persecuted ten years after she fled her native country. Past persecution of the severity that Ms. Kaweesa endured creates a presumption of a well-founded fear of future persecution, and can be sufficient, in itself, to establish protection even if country conditions have improved.    See 8 C.F.R. § 208.13(b)(1)(ii); see also Matter of N-M-A, Int. Dec. #3368 (BIA 1998). In addition, as noted above, past torture inflicted upon the applicant is one of the factors courts look to determine the likelihood of future torture. See 8 C.F.R. § 208.16 (c)(3). Perhaps the failure to address this issue would not be prejudicial if the BIA were affirming an Immigration Judge's decision *on the merits*, where the Immigration Judge's opinion demonstrated that he had weighed all the evidence and considered all the arguments. But here there was no record on the merits for the BIA to review, and yet it dismissed the issue of past persecution without comment. Failure to address these issues deprives the reviewing court of the ability to engage in meaningful review, for it simply cannot ascertain what the basis for the BIA's

---

[2] This issue need not be raised in the pending Motion to Reopen before the BIA because it the BIA has no jurisdiction to review claims of violation of due process as administrative agencies cannot adjudicate constitutional questions. Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994). Moreover, if a preliminary injunction is granted, the BIA will have the opportunity to rectify this error by addressing Ms. Kaweesa's Torture Convention claims in light of the new evidence.

decision.  See El Moraghy v. Ashcroft, 331 F.3d 195, 204 (1st Cir. 2003) (meaningful judicial review not possible without reasoned discussion of past persecution); see also Gauilius v. INS, 147 F.3d 34, 36 (1st Cir. 1998) (in order for an appeals court to conduct meaningful substantive review, BIA must state with sufficient particularly and clarity the reasons for denial.).  Accordingly, for the reasons noted above, this court has jurisdiction to remedy this infirmity.

C.    **Habeas Corpus Jurisdiction Under 28 U.S.C. §2241 Exists Because the BIA Committed Legal and Constitutional Errors in Interpreting the "Exceptional Circumstances" Requirement of INA §240(b)(C)(5) to Deny Petitioner's Motion to Rescind Her In Absentia Removal Order**

1.  *The BIA erred in affirming the Immigration Court's denial of petitioner's motion to rescind the in absentia order*

"Exceptional circumstances" are defined as "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien."  See § INA 240(e)(1).  The Immigration Judge committed several legal errors in interpreting this statutory provision.  Because the BIA affirmed without opinion, the reviewing court reviews the decision of the Immigration Judge.  See Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2000).

First, the Immigration Judge failed to examine the "totality of the circumstances." In deciding what constitutes "exceptional circumstances," courts must "look to the particularized facts and the totality of the circumstances presented in each case." Barseghian v. INS, 2001 U.S. App. LEXIS 15118. *4-*5 (9th Cir. July 2, 2001) (citing

Singh v. INS, 213 F.3d 1050, 1052 (9th Cir. 2002)); see also Herbert v. Ashcroft, 325

F.3d 68, 72 (1st Cir. 2003) ("The totality of the circumstances must be considered.") ; In

re Rafael Flores Morfin, 2003 WL 23216785 (BIA, October 7, 2001) (applying Singh

standard to find "exceptional circumstances" where respondent did not attend hearing

because his car broke down). Specifically, the Immigration Judge erred in failing to take

into account the undisputed fact that Ms. Kaweesa sought to reopen the *in absentia* order

*pro se* as soon as she could after she realized her mistake – only six days after the

scheduled hearing. See, e.g., Nazarova v. INS, 171 F.3d 478, 481 (7th Cir. 1999)

(reversing BIA's denial of motion to reopen on due process grounds where immigrant

showed up late to hearing because of delays by the interpreter and less than one week

later, submitted a handwritten motion to reopen); In re J-P, 22 I & N Dec. 33 (BIA 1998)

(finding length of time it took immigrant to reopen to be a factor in determining

exceptional circumstances, noting that conference report specifically instructed the

Attorney General to look at the totality of the circumstances to determine whether a

noncitizens' failure to appear was justifiable).   There is simply no indication that Ms.

Kaweesa's error was due to a desire to flee or a failure to take her responsibilities

seriously.  See Herbert, 325 F.3d at 71 ("There restrictions were adopted in response to a

serious problem: some aliens deliberately did not appear for hearings and thus effectively

extended their stay in this country. This tactic imposed considerable costs on the INS. . .

") Moreover, it is noteworthy that the very disability that contributed to Ms. Kaweesa's

memory problem was itself a result of the trauma she underwent, which in turn was

*prima facie* evidence of the validity of her claim.  See 2.1. Finally, the Immigration

Judge did not take into account the fact that the Immigration Service itself did not oppose the motion to reopen.

Second, the Immigration Judge committed clear legal error when he concluded, "The respondent could have easily contacted the Court to verify her hearing date to avoid her dilemma." See Ex. 5. This reasoning would make sense if Ms. Kaweesa *had realized* that she was uncertain as to the date of her hearing. But she missed her hearing by a few days *precisely because* she did not realize that she had misremembered the date and was not on notice of her error.[3] See Ex. 5 at p.1 ("However, she asserts that she . . . *inadvertently* assumed that her hearing was scheduled for May 17, 1999) (emphasis added)). Such an innocent, understandable mistake should not forfeit Ms. Kaweesa's right to a hearing. Indeed, courts have found innocent date mix-ups to constitute exceptional circumstances *even absent evidence of a psychological illness.* As one court noted in a case involving an applicant for adjustment of status,

> "His failure to appear on the correct date was due either to a miscommunication by the interpreter or a misunderstanding by [the applicant.] In either event, it was simply a mistake in dates that all of us are prone to make at one time or another. . . The point is that this type of mistake in dates can be made by any of us. Our system of justice generally takes this into account in rectifying defaults and instead determining matters on the merits."

See Barseghian v. INS, 2001 U.S. App. LEXIS 15118. *4-*5 (9th Cir. July 2, 2001) (unpublished disposition).

This Court also has habeas jurisdiction because the BIA's affirmance of the denial of Ms. Kaweesa's motion to rescind the *in absentia* order was unconstitutional. To be

---

[3] Perhaps this slip in logic would not be so troubling if the Immigration Judge's decision was, on the whole, transparent, evidencing that it was the product of reasoned decision-making. But, as evidenced by the exact repetition of the two sentences on page 2 beginning, "The Immigration Judge has jurisdiction to reopen any case. . . " the Immigration Judge "cut and pasted" his decision from previous orders.

consistent with the Due Process Clause of the Fifth Amendment of the Constitution, the "exceptional circumstances" requirement set forth in the statute and regulations must be read to take into account the harm that the noncitizen would face if not given a hearing and balance that against the prejudice the government would face by allowing the hearing to go forward. See Nazarova v. INS, 171 F.3d 478 (7th Cir. 1999) (*in absentia* order violated noncitizen's due process right to a hearing); Barseghian, 2001 U.S. App. LEXIS 15118 at *4-*5 (weighing inconvenience to the Service against the "grave harm" to the immigrant in "not requiring the proceeding to be heard on the merits," especially where the immigrant's claim for adjustment of status was not frivolous). It is a "cardinal principle" of statutory construction that courts have a duty to read statutory and regulatory provisions to avoid Constitutional infirmities and Constitutional questions. See Zadvydas v. Davis, 121 S. Ct. 2491, 2498 (2001). At stake in Ms. Kaweesa's hearing was whether her life and freedom would be in danger if she were removed to the country she fled. Yet it is clear from the Immigration Judge's decision that neither the severity of the harm Ms. Kaweesa alleged, nor her *prima facie* eligibility for relief, nor the relatively minimal inconvenience to the immigration service caused by her missing her master calendar hearing, formed part of his determination. See Ex. 5. While the ultimate *weighing* of relevant factors is a discretionary matter unreviewable on habeas, the failure to *consider the* relevant factors in a case such as this deprived Ms. Kaweesa of her statutory and due process rights.

2. *This court has habeas jurisdiction to review the Immigration Judge's denial of petitioner's motion to rescind her in absentia because her challenges are statutory and constitutional, and Lopez v. Ashcroft, 267 F.Supp. 2d 150 (D. Mass. 2003) is distinguishable.*

This court has jurisdiction over Ms. Kaweesa's challenges to her *in absentia* order because they are constitutionally and statutorily-based. That the *ultimate* decision whether to reopen has been characterized as "discretionary" does not preclude habeas review in this case for several reasons.

First, there is a statutory provision for reopening cases where the order of removal was entered *in absentia.* Thus, neither INS v. Jong Ha Wang, 450 US. 139 nor INS v. Doherty , 502 US 314, 322, which held that motions to reopen are in the agency's discretion, control.

In Lopez v. Ashcroft, this court held that the decision to grant a motion to reopen a removal order entered *in absentia* is in the discretion of the agency. Id., 276 F. Supp. 2d at 153 (D. Ma. 2003). However, Ms. Kaweesa respectfully submits that a petitioner has a statutory right to have an order of removal *in absentia* rescinded once the petitioner meets one of the conditions specified by the statute because that is the only constitutional construction of the statute. INA §240(a)(5)(C).

The statute specifies three independent conditions upon which failure to appear at the hearing is excused. They are either exceptional circumstances, or lack of notice of the hearing to the alien, or the alien being in state or federal custody at the time of the hearing. The government must provide reasonable notice and the opportunity to be heard to satisfy the minimum requirements of due process. See Cleveland Bd. Of Educ. v. Lourdermill, 470 U.S. 532, 542 (1985). The two latter conditions for the rescission are

necessary to bring the statute in compliance with the Due Process clause of the constitution. The fact that Congress made the conditions independent and co-equal by separating them through "or" indicates that the Congress viewed the "exceptional circumstances" condition as a minimum requirement of Due Process also.

Were the agency to have the discretion to deny the rescission of the order even if the petitioner showed that he lacked notice or that he was physically unable to attend, or that there was exceptional circumstance, the statute would become unconstitutional as a violation of due process.    "Where an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible', the court is obligated to construe the statute to avoid such problems". St. Cyr, 533 U.S. at 300. Here, the alternative interpretation of the statute is fairly possible because the "may" in the statutory wording does not necessarily indicate that the decision to rescind is discretionary. Instead, it may be read only as indicating the specified three situations where the agency must rescind an in absentia order of removal and precluding  such rescissions  in any other situations but the ones specified.   The Immigration Court is under mandatory obligation to rescind an *in absentia* order of removal once the petitioner shows one of the three conditions specified.  Thus, the statute does require the agency to rescind the order of removal entered *in absentia* once the petitioner demonstrates exceptional circumstances.

Motions to reopen are disfavored because they amount essentially to a new trial. INS v. Doherty, 502 U.S. 314, 323. In removal proceedings, additional consideration is the delay of the inevitable removal which is always to the advantage of the petitioner. Id. However, these rationales do not apply to this petitioner.  There was no decision on the

merits or even determination of eligibility for this petitioner, and therefore, there will be no new trial. This petitioner is not merely "delaying the inevitable" because she has a very strong claim for asylum and for Torture Convention relief. In these circumstances, motions to reopen should be favored.

Finally, there are distinctions in the equities that help support the finding that the court has jurisdiction. The petitioner did not have a criminal record, like Mr. Lopez. The petitioner filed her motion to reopen immediately after she realized that she missed her hearing due to an honest mistake, whereas Lopez waited three months to file. Mr. Lopez was eligible only for the highly discretionary cancellation of removal. In contrast, the petitioner has a very strong claim for asylum, and for the protection of the Convention Against Torture which is mandatory for all qualified applicants. Finally, there is no need for a highly factual inquiry into petitioner's medical conditions because petitioner submits that her motion to reopen was unlawfully denied based on the undisputed facts – in other words, independently of her new medical evidence of PTSD.

**D.    Habeas Corpus Jurisdiction Under 28 U.S.C. §2241 exists because the petitioner has no other way to present on direct review constitutional challenges to her order of deportation, and could not have sought review of her claims in the federal court of appeals.**

The Supreme Court has held habeas corpus review is available when there is no alternative judicial forum to hear a claim because absence of such a forum raises serious constitutional questions. St. Cyr, 533 US at 314. Although the Court of Appeals has jurisdiction to review the denial of a motion to reopen, the Court of Appeals would be unable to review the petitioner's CAT claim. That is because the jurisdiction of the Court

of Appeals in such instances is confined only to the validity of the notice, reasons for not appearing, and the removability of the alien. INA §240(1)(b)(5)(D). The First Circuit has specifically stated that it lacks jurisdiction to review the agency's refusal to even consider a petitioner for a form of relief. Sousa, 226 F.3d at 35. Thus, the petitioner's CAT claim would never be heard. The consequence of finding that there is no habeas review available for the petitioner is a violation of the US treaty obligations. St. Fort, 329 F.3d at 201.

Further, the question of the petitioner's eligibility for CAT relief is not susceptible to the adjudication on direct review. The Court of Appeals is limited only to the evidence in the administrative record in its review. INA §242(b)(4)(A). The administrative record contains the evidence regarding the petitioner's removability. However, the record lacks the factual evidence of petitioner's eligibility for relief from removal because the petitioner could not submit it . Thus, the petitioner is deprived of the opportunity to have any judicial review of her CAT claim. This result is abhorrent and contrary to the spirit of the great writ of habeas corpus. It is also anomalous, since an aggravated felon will be allowed to have his CAT claim considered by the district court while the petitioner, a person who committed no crimes, would not be allowed to have her day in court. See St. Cyr, 533 U.S. at 314.

**E.**    **Habeas Corpus Jurisdiction Under 28 U.S.C. §2241 exists even if petitioner could have sought review of her claims in the federal court of appeals**

The First Circuit has left open the difficult jurisdictional question of whether the availability of direct review in the court of appeals forecloses habeas jurisdiction for the

same claim. See Seale v. INS, 323 F.3d 150, 154-55 (1st Cir. 2003). The result hinges on the interpretation of the Supreme Court's decision in St. Cyr, and as the First Circuit has noted, "[g]iven the strong arguments on both sides, it is by no means a clear call." Id. at 154. Although in Arloo v. Ashcroft, 238 F.Supp. 2d 381 (D. Mass. 2003), the district court ultimately held that "habeas relief is proper only when there is no other way for an alien to present a legal challenge to a deportation order," the magistrate judge, following the lead of the Second and Third circuits, found that habeas jurisdiction did lie. Id.    As this issues has not yet been decided in the First Circuit, Ms. Kaweesa respectfully requests that this court adopt the *magistrate judge's* reasoning set forth in his thorough, detailed, and compelling recommendation in Arloo.

**F.    The Court has Habeas Corpus Jurisdiction to hear the petitioner's Substantive Due Process Claim**

Habeas corpus jurisdiction arises due to denial of substantive due process. The doctrine of state-created danger states that where government affirmatively places a person into a dangerous situation, or by placing a person in proximity of already-existing danger, the government violates the 5th amendment's substantive due process protections. Rosciano v. Sonchik, 2002 U.S. Dist. Lexis 25419. Due process clause imposes obligation on the state to protect an individual from harm inflicted by private parties if the government created the danger. Builes v. Nye, 239 F. Supp. 2d 518,  526 (D. Pa. 2003). The government is about to remove the petitioner to a place where she will be tortured and killed--the constitution prevents such discretionary removals by the attorney general. There is no need for administrative exhaustion because neither immigration

court nor BIA have the subject matter jurisdiction to adjudicate constitutional claims.
Kelly v. Farquharson, 256 F. Supp. 2d 93, 100 (D. MA 2003).

II.    PETITIONER'S REQUEST FOR A STAY OF REMOVAL SHOULD BE
       GRANTED BECAUSE SHE WILL SUFFER IRREPERABLE HARM IF
       REMOVED TO UGANDA, SHE IS LIKELY TO SUCCEED ON THE
       MERITS, A STAY OF REMOVAL WILL NOT UNDULY PREJUDICE THE
       RESPONDENT, AND A STAY OF REMOVAL IS IN THE PUBLIC
       INTEREST

### A.    Petitioner will suffer irreparable harm if removed to Uganda before the BIA adjudicates her motion to reopen

As demonstrated by the new evidence submitted with her Motion to Reopen to the BIA, Ms. Kaweesa is at substantial risk of being killed, raped, tortured, or imprisoned if she is returned to Uganda. See Ex. 2. Ms. Kaweesa's fear of the harm that will befall her is objectively reasonable in light of the persecution she and her family have endured at the hands of the government on account of their religious and political activities, including the severe beatings that left her son Fred hospitalized. Id. High-level human rights documents indicate that torture by government security forces is pervasive and systematic, and that someone with Ms. Kaweesa's background is at particularly serious risk. Id. The Ugandan government is presumed to know that Ms. Kaweesa will be deported soon because it granted the United States the travel papers for her; indeed Ms. Kaweesa fears that Ugandan security agents will be waiting for her at the airport. Id. If Ms. Kaweesa is deported to Uganda before the BIA can hear her motion to reopen and rescind is decided, it will be too late to protect her.

### B.    Petitioner is likely to prevail on the merits before the BIA

A preliminary injunction is also warranted because Ms. Kaweesa is sufficiently likely to succeed on the merits in her Motion to Reopen before the BIA. Ms. Kaweesa's motion offers compelling evidence that speaks directly to the core of the BIA's concerns. Id. The BIA should be given the opportunity to consider this pressing new evidence and rectify its past legal and constitutional errors.

**C.    Respondents will not be prejudiced by a stay of removal, and the balance of hardships strongly favors the petitioner**

A preliminary injunction is also justified because it will not unduly burden the respondents, and any prejudice to the respondents is strongly outweighed by the hardship to the petitioner. Having kept Ms. Kaweesa – an individual with no criminal record -- in custody for nine months already, DHS will not be prejudiced by a stay for the few months it takes the BIA to decide this matter. Indeed, as DHS often keeps detainees in custody for more than six months in order to negotiate the issuance of travel documents, it is not in a position to complain of any delay on Ms. Kaweesa's part. This is particularly the case where as here, the evidence demonstrates that Ms. Kaweesa suffers from PTSD and MDD. Ms. Kaweesa is not in any way a danger to the community, and the hardships and procedural history in her case are so extraordinary and unique that DHS need not worry that a grant of a stay will delay the removal of other noncitizens. The government will be inconvenienced if it cannot fill Ms. Kaweesa's seat on the plane to Uganda, but this inconvenience pales in comparison to the harm Ms. Kaweesa will face if she is removed without a full evidentiary hearing.

**D.    The public interest favors a stay of removal to allow the BIA to adjudicate petitioner's motion to reopen based on new evidence**

Finally, a preliminary injunction is in the public interest in a case such as this, where the petitioner has never had her case decided on the merits. Neither the Department of Homeland Security nor the citizenry it protects has an interest in removing Ms. Kaweesa unfairly, as evidenced by the Immigration Service did not oppose her initial motion to reopen. Ms. Kaweesa is not a criminal and is certainly not a terrorist. To the contrary, Ms. Kaweesa is a tremendous asset to her community, whose worst offense was to fail to double-check the date of her master calendar hearing. <u>See</u> Exs. 6. and 7 (Letter from Rev. Charles Bbosa, Senior Pastor, dated September 15, 2003).[4]  While the public may have a legitimate interest in making sure that undocumented immigrants do not seek to delay the legal process to prolong their unlawful tenure, such concerns are mitigated here by Ms. Kaweesa's psychological condition, which arises from the very trauma that forms the basis of her claim.  She has already paid the price for such delay by losing nine months of freedom; she should not be made to pay with her life. For these reasons – and in light of the human rights at stake – any delay on Ms. Kaweesa's part should be forgiven.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1)   Assume jurisdiction over this matter;

2)   Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody;

3)   Order Respondents to refrain from transferring the Petitioner out of the

---

[4] The government asserts that Ms. Kaweesa is a flight risk but has failed to provide any evidence for this determination.

jurisdiction of the BICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody;

4) Stay Petitioner's Removal until the BIA decides Petitioners' Motion to Reopen; and

5) Grant any other and further relief which this Court deems just and proper.

Respectfully submitted this 16th day of April, 2004

*Alexandra Dufresne*

ALEXANDRA DUFRESNE, BBO #654959
Detention Attorney
Boston College Immigration and Asylum Project
DANIEL KANSTROOM, BBO # 258050
Professor and Director, International Human Rights Law Program
885 Centre Street
Newton, MA 02459-1148
(617) 552-0593 (voice)
(617) 552-2615 (fax)
alexandra.dufresne.1@bc.edu
for Petitioner Juliette Kaweesa

# CERTIFICATE OF SERVICE

I, Alexandra Dufresne, hereby certify that I served a true copy of the foregoing, with Exhibits 1 and 3-12, on

Mark J. Grady
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Te. No. (617) 748-3136

by hand delivery on April 16, 2004.   Because Mr. Grady was served with an identical copy of Exhibit 2 (and subexhibits) on April 15, 2004 via FedEx, I am not serving it on him again.

Dated: 4/16/04

_Alexandra Dufresne_
Alexandra Dufresne