UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the matter of: Juliette Kaweesa<br>#A 75 835 579<br><br>Petitioner<br><br>JOHN D. ASHCROFT, Attorney General;<br>BRUCE CHADBOURNE, Interim Field<br>Office Director for Detention and Removal,<br>Boston Field Office, Bureau of Immigration<br>and Customs Enforcement; KATHLEEN M.<br>DENNEHY, Acting Commissioner,<br>Massachusetts Dep't of Correction, and the<br>Bureau of Immigration and Customs<br>Enforcement (BICE) | Civ No: 04-10513-WGY |

## MEMORANDUM OF LAW

### Facts and Procedural History

Ms. Kaweesa served as a Christian minister in Uganda. She worked mainly with women and children and was well known in Kampala for her preaching and music ministry. She often traveled with a portable microphone to preach and sing and would lead prayer groups. She became involved with a group call Human Rights Africa because they promoted respect for women, a message she shared with the women she spoke to through her ministry.

Ms. Kaweesa's husband, Stephen Kaweesa, was the pastor of the Heritage Revived Church in Uganda until he was taken away from their home by the government security officers in 1994. He was never heard from again and is presumed dead. Ms. Kaweesa believes that her husband was involved in a rebel freedom movement or opposition party. She also suspects that her brother was involved in such a movement as well.

Soon after her husband was taken away and disappeared, Ms. Kaweesa was detained by government security forces while she was about to speak at one of her church's "Crusades". Men in military uniforms took her to military barracks outside Kampala, where she was detained, beaten, kicked, and raped by several different men. She escaped detention and entered the United States on Augsut 2, 1994 on a B-2 Visa. She filed her application for Political Asylum pro se in October of 1997. Her case was referred to an Immigration Judge for lack of detail because her application did not have any detail. (See Exhibit 1)

Ms. Kaweesa was sent a notice that her Master Calendar hearing was scheduled for May 13, 1999 but she had mistaken the date for May 17, 1999. When she realized her mistake, she immediately went to the Immigration Court and asked to speak to the Judge. The clerk told her that she could not speak to the Judge, but that she should file a Motion to Reopen. She submitted a handwritten Motion to Reopen on May 19, 1999 and later hired Attorney Cashman to help her supplement her Motion to Reopen and eventually appeal the denial of this motion to the BIA.

On June 23, 1999 the Immigration Judge denied Ms. Kaweesa' Motion to Reopen stating: "Although the respondent's error is not incomprehensible, she has failed to demonstrate that exceptional circumstances beyond her control prevented her from attending these proceedings. The respondent could have easily contacted the Court to verify her hearing date to avoid her dilemma." (See Exhibit 2). The BIA affirmed the denial of her Motion to Reopen without an opinion on May 6, 2002. (See Exhibit 3)

Although neither Ms. Kaweesa nor her attorney realized that she missed her hearing due to strong evidence that Ms. Kaweesa suffered from Post Traumatic Stress Disorder (PTSD) and depression (Major Depressive Disorder or MDD) – medical conditions which "frequnetly interfere with memory". This evidence was fully discussed and submitted in Ms. Kaweesa's Emergency Motion to Reopen before the BIA, filed April 15, 2003. (See Exhibit 4)

On or about May 6, 2002, Attorney Cashman informed Ms. Kaweesa of the BIA denial to her Motion to Reopen via a letter. She never heard from Attorney Cashman after receiving this letter and Attorney Cashman never responded to any of her many telephone messages she left at

his office. Attorney Cashman never informed her that he no longer wanted to represent her or of any legal options that she had with regards to her immigration case and her right to appeal.

Since Ms. Kaweesa was unable to contact Attorney Cashman, she decided to consult with another attorney in June or July of 2002. She went to Al Mondel, who office was located on Massachusetts Avenue in Cambridge Massachusetts. Al Mondel informed her that she could appeal the BIA's decision within 90 days from the date of the decision to the District Court of Massachusetts. She paid Mr. Mondel $1,500.00 in cash to appeal the BIA's decision.

In August of 2002, she spoke to Al Mondel who informed her that he filed the Motion to Reopen/Appeal. Al Mondel showed her a blue piece of paper stating that he had a receipt, which represented that her Motion to Reopen/Appeal was received. She had no reason to believe that Al Mondel was lying and misrepresenting himself to her.

From August 2002 until March or April of 2003, Ms. Kaweesa called Al Mondel on several occasions to get an update of her pending Motion to Reopen/Appeal. Al Mondel always responded by stating that he had not received a response regarding her Motion/Appeal and that he would contact her once he did receive a response.

On or about April of 2003, there was an article in a Boston newspaper concerning Al Mondel stating that he was misrepresenting himself as an immigration attorney and was not licensed to practice law in Massachusetts. (See Exhibit 5) Once Ms. Kaseewa saw that newspaper article, she consulted with Attorney Elizabeth Broderick immediately.

It was at this time that Ms. Kaseewa discovered that Al Mondel never submitted a Motion to Reopen/Appeal to the Board of Immigration Appeal on her behalf. After hiring Attorney Broderick, she immediately submitted a Motion to Reopen to the Board of Immigration Appeal in July 2003. Attorney Broderick received a denial for the Motion to Reopen in November of 2003. (See Exhibit 6) At this time, Attorney Broderick informed Ms. Kaseewa that she could no longer represent her since there was nothing left to do on her case and that her only option was to

write a letter to a Senator pleading for his/her help. Sometime after November 2003, Ms. Kaseewa wrote a lettter to a Senator pleading that they help her with my immigration problems.

In February or March of 2004, Ms. Kaseewa consulted with Attorney Alexandra Dufresne of the Boston College Law School Legal Services, 885 Centre Street, Newton, Massachusetts. Attorney Dufresne filed a Motion to Reopen with the Board of Immigration Appeal in April of 2004 which was later denied in May of 2004. Attorney Dufresne also withdrew from this case in May of 2004 stating that she could no longer assist Ms. Kaweesa because of the limited amount of resources at Boston College Law School Legal Services.

Attached please find Ms. Kaweesa's affidavit in support of the above-mentioned facts. (See Exhibit 7)

## Issues

1.  Does the District Court of Massachusetts have jurisdiction to review the Immigration Judge's decision of June 23, 1999 denying Ms. Kaweesa's Motion to Reopen/Rescind?
2.  Does the District Court of Massachusetts have jurisdiction over the BIA's May 6, 2002 decision affirming the Immigration Judge's decision of June 23, 1999?
3.  Does jurisdiction only exist if the lost opportunity to appeal resulted in prejudice or likely resulted in prejudice? Was there prejudice or likely prejudice in this case, and if so, how?
4.  If the Court does have jurisdiction, what is the scope of that jurisdiction?
5.  What role, if any, do international laws, treaties, and customary international laws play in resolving statutory gaps, conflicts, and ambiguities.
6.  Does she have a legitimate claim for relief?

**Arguments**

This Court has personal and subject matter jurisdiction to adjudicate Ms. Kaweesa's Habeas Corpus Petition for the hereinafter stated reasons. The Court does not question whether or not they have personal jurisdiction on Ms. Kaweesa, this Memorandum will not address that issue. In regards to subject matter jurisdiction, the jurisdictional grounds are intertwined with the claims themselves, therefore jurisdiction and the merits are discussed together.

I.   **EXHAUSTION OF REMEDIES**

Exhaustion of administrative remedies is primarily a judge-made doctrine that has evolved into a rule of judicial administration and a pragmatic tool for courts to regulate the timing of judicial review. A district court and/or appellate court may invoke a petitioner's failure to exhaust administrative remedies as grounds for finding a lack of subject matter jurisdiction over a petitioner's entire appeal from an agency decision. Or, in accepting a case, a court can also employ the doctrine to preclude certain issues or arguments that the petitioner failed to assert in the administrative process. Ekimian vs. INS, 303 F.3d 1153, 1159 (9th Cir. 2002) The reviewing court can dismiss a claim or refuse to hear the merits of a claim until the petitioner has properly exhausted the available remedies. DiLaura vs. Power Auth., 982 F.2d 73, 79 (2d Cir. 1992).

Courts generally recognize two kinds of administrative exhaustive requirements: statutorily mandated exhaustion and discretionary exhaustion. First, exhaustion of administrative remedies may be required by statute, principly the Immigration and Nationality Act (hereinafter "INA") and in some cases the Administrative Procedure Act (hereinafter "APA") as a mandatory prerequisite to judicial review. Second, under the discretionary exhaustion, even if no statute that explicitly requires exhaustion of administrative remedies, courts may nevertheless invoke a common law exhaustion requirement. Even when no statute governs the question of exhaustion of remedies courts may exercise their own judgment in finding an exhaustion requirement based on common law reasoning. McCarthy vs. Madigan, 503 U.S. 140 (1992). Such discretionary exhaustion is not jurisdictional, in contrast to a statutory exhaustion requirement.

Ms. Kaweesa has exhausted her administrative remedies to the extent required by law, and her only remedy is by way of this judicial action.

## II. MS. KAWEESA' HAS BEEN DENIED DUE PROCESS

Habeas Corpus jurisdiction arises due to the denial of procedural and substantive due process. This issue need not be raised in the prior Motions to Reopen before the Immigration Court and/or the BIA has no jurisdiction to review claims of violation of due process, as administrative agencies cannot adjudicate constitutional questions. Thunder Basin Coal Co. vs. Reich, 510 U.S. 200, 215 (1994).

Ms. Kaweesa's procedural and substantive due process rights are violated by the Immigration Court and the BIA (discussed later in more details). There is no need for administrative exhaustion because neither Immigration Court nor the BIA have subject matter jurisdiction to adjudicate constitutional claims. Kelly vs. Farquharson, 256 F. Supp. 2d 93, 100 (D. MA 2003).

## III. THIS COURT HAS HABEAS JURISDICTION TO REVIEW THE IMMIGRATION JUDGE'S DENIAL OF MS. KAWEESA' MOTION TO RESCIND AND REOPEN HER IN ABSENTIA ORDER BECAUSE HER CHALLENGES ARE STATUTORY AND CONSTITUTIONAL

This Court has jurisdiction over Ms. Kaweesa's challenges to her in absentia order because they are constitutionally and statutorily-based. The ultimate decision whether to reopen has been characterized as "discretionary" and does not preclude habeas review in this case for the hereinafter-mentioned reasons.

In Lopez vs. Ashcroft, 267 F.Supp. 2d 150 (D. Mass. 2003), the Court held that the decision to grant a Motion to Reopen a Removal Order entered in absentia is in the discretion of the agency. This case is distinguishable from the one at hand because Ms. Kaweesa submits that a petitioner has a statutory right to have an order of removal in

absentia rescinded once the petitioner meets one of the conditions specified by the statute because that is the only constitutional construction of the statute.

The statute specifies three independent conditions upon which failure to appear at the hearing is excused. They are either exceptional circumstances, or lack of notice of the hearing to the alien, or the alien, being in state or federal custody at the time of the hearing. The government must provide reasonable notice and the opportunity to be heard to satisfy the minimum requirements of due process. Cleveland Bd. Of Educ vs. Lourdermill, 470 U.S. 532, 542 (1985). These two conditions are necessary to bring the statute in compliance with the Due Process clause of the Constitution. The fact that Congress made the conditions independent by separating them through the word "or" indicates that Congress viewed the "exceptional circumstances" condition as a minimum requirement of Due Process. For example, when an agency has discretion to deny the rescission of an Order if a petitioner shows that he/she lacked notice or that he/she was physically unable to attend or that there is exceptional circumstance, then the statute becomes unconstitutional as a violation of Due Process.

Further the Court in St. Cyr held that "Where an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible', the court is obligated to construe the statute to avoid such problems". St. Cyr, 533 U.S. at 300. Here, the alternative interpretation of the statute is fairly possible because the "may" in the statutory wording does not necessarily indicate that the decision to rescind is discretionary. Instead, it may be read only as indicating the specified three situations where the agency must rescind an in absentia order of removal and precluding such rescissions in any other situations but the ones specified. The Immigration Court is under mandatory obligation to rescind an in absentia order of removal once the petitioner shows one of the three conditions specified above. Therefore, the statute does require the agency to rescind the order of removal entered in absentia once the petitioner demonstrates exceptional circumstances.

7

Therefore, this Court has jurisdiction over Ms. Kaweesa's challenges to her in absentia order due to the fact that her challenges are constitutionally and statutorily-based.

## IV. ASSUMING THAT MS. KAWEESA'S LAWYER FAILED TO FILE THE FIRST CIRCUIT APPEAL HE TOLD HER HE HAD FILED, THIS COURT HAS HABEAS JURISDICTION TO REVIEW THE BIA'S JUNE 23, 1999, DECISION, AND TO ADDRESS LEGAL CLAIMS THAT WERE BEYOND THE BIA'S POWER TO ADDRESS

### *(a) This Court has Jurisdiction to Review the BIA's June 23, 1999 Decision*

Due to the fact that the BIA affirmed the Immigration Judge's decision to deny Ms. Kaweesa's Motion to Reopen and Rescind without writing an opinion, the reviewing Court therefore reviews the decision of the Immigration Judge. Albathani vs. INS., 318 F.3d 365, 373 (1st Cir. 2000).

The Immigration Judge committed several legal errors in interpreting the statutory provision of "exceptional circumstances". They define "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." See § INA 240(e)(1).

First, the Immigration Judge failed to examine the "totality of the circumstances." In deciding what constitutes "exceptional circumstances," courts must "look to the particularized facts and the totality of the circumstances presented in each case." Barseghian vs. INS, 2001 U.S. App. LEXIS 15118 (9th Cir. July 2, 2001)(citing Singh vs. INS, 213 F.3d 1050, 1052 (9th Cir.2002)); see also Herbert vs. Ashcroft, 325 F.3d 68, 72 (1st Cir. 2003) ("The totality of the circumstances must be considered."); In re Rafael Flores Morfin, 2003 WL 23216785 (BIA, October, 2001) (applying Singh standard to find "exceptional circumstances" where respondent did not attend hearing because his car broke down.)

Specifically, the Immigration Judge erred in failing to take into account the undisputed fact that Ms. Kaweesa sought to reopen the in absentia order pro se immediately after she realized her mistake – only six days after the scheduled hearing. See, e.g., Nazarova vs. INS, 171 F.3d 478, 481 (7th Cir. 1999) (reversing BIA's denial of Motion to Reopen on Due Process grounds where immigrant showed up late to hearing because of delays by the interpreter and less than one week later, submitted a handwritten Motion to Reopen); In re J-P, 22 I & N Dec. 33 (BIA 1998) (finding length of time it took immigrant to reopen to be a factor in determining exceptional circumstances, noting that conference report specifically instructed the Attorney General to look at the totality of the circumstances to determine whether a noncitizens' failure to appear was justifiable). There is simply no indication that Ms. Kaweesa's error was due to a desire to flee or a failure to take her responsibilities seriously. Ms. Kaweesa has a legitimate claim for Political Asylum and under the Torture Convention. See Herbert, 325 F.3d at 71 ("There restrictions were adopted in response to a serious problem: some aliens deliberately did not appear for hearings and thus effectively extended their stay in this country. This tactic imposed considerable costs on the INS...") Moreover, it is noteworthy that the very disability that contributed to Ms. Kaweesa's memory problem was itself a result of the trauma she underwent, which in turn was prima facie evidence of the validity of her claim. (See Exhibit 4 – Doctors letter)

Secondly, the Immigration Judge committed clear legal error when he concluded, "The respondent could have easily contacted the Court to verify her hearing date to avoid her dilemma." This reasoning would make sense if Ms. Kaweesa had realized that she was uncertain as to the date of her hearing. But she missed her hearing by a few days precisely because she did not realize that she had erred in the date and was not on notice of her error. Such an innocent, understandable mistake should not forfeit Ms. Kaweesa's right to a hearing. Indeed, courts have found innocent date mix-ups to constitute exceptional circumstances even absent evidence of a psychological illness. As one court noted in a case involving an applicant for adjustment of status, "His failure to appear on the correct date was due either to a miscommunication by the interpreter or a

misunderstanding by [the applicant]. In either event, it was simply a mistake in dates that all of us are prone to make at one time or another...The point is that this type of mistake in dates can be made by any of us. Our system of justice generally takes this into account in rectifying defaults and instead determining matters on the merits." See Barseghian vs. INS, 2001 U.S. App. LEXIS 15118 (9th Cir. July 2, 2001).

In addition, the Immigration Judge and the BIA failed to address the issue of Ms. Kaweesa's past persecution. Instead, it focused exclusively on the risk of future harm. Past persecution of the severity that Ms. Kaweesa endured creates a presumption of a well-founded fear of future persecution, and can be sufficient, in itself, to establish protection even if the countries conditions have improved. 8 C.F.R. § 208.13(b)(1)(ii); Matter of N-M-A, Int. Dec. #3368 (BIA 1998). Also as noted above, past torture inflicted upon the applicant is one of the factors courts look to determine the likelihood of future torture. 8 C.F.R. §208.16 (c)(3).

Perhaps the failure to address this issue would not be prejudicial if the BIA were affirming an Immigrations' Judge's decision on the merits, where the Immigration Judge's opinion demonstrated that he had weighed all the evidence and considered all the arguments. But here, there was no record on the merits for the BIA to review, and yet it dismissed the issues of past persecution without any comments and took no evidence of future persecution to make a determination.

### (b) Ms. Kaweesa's Evidence regarding Al Montel falls within the Scope of this Court's Jurisdiction

Since the Federal Courts do not participate directly in the deportation process, their review is confined usually to the administrative record. The generally stated rule is that the Court will review only the administrative record and will not conduct a de novo hearing on matters that were, or should have been, considered in the administrative proceeding. Kessler vs. Strecker, 307 U.S. 22, 59 S. Ct. 694, 83 L. Ed. 1082 (1939). Of course, if the administrative record is defective or incomplete, or if other irregularities are found, the court can remand to the administrative authorities to remedy the omission. United States vs. Grace and Sons, 384 U.S. 424 (1966).

The function of the reviewing Court normally is to determine whether the administrative order is validly supported by the record of the proceedings. In the absence of any showing of unfairness or illegality in the administrative record, there is no basis for a judicial intervention. Marino vs. Holton, 227 F.2d 886 (7th cir. 1955). The Court has no authority to make new findings or to direct the administrative officers to make new findings. Ng Yip Yee vs. Barber, 267 F.2d 206 (9th Cir. 1959). If the Court finds the administrative order to have been illegal or unfair, it can only nullify the order or remand the case to the administrative officers to enable them to correct any errors indicated by the Court. NLRB vs. Met. Life Ins. Co., 380 U.S. 438 (1965).

Sometimes the Courts are confronted with situations in which they find excessive hardship. If the administrative order conforms with the statutory mandate and the procedures have not offended due process requirements, the Courts ordinarily will not intervene, even if they deem the result to be harsh. Bruno vs. Sweet, 235 F.2d 801 (8th Cir. 1956). Having stated this proposition, one must recognize its limitations. When courts deal with a consequence they consider unjust, they will often find a way to avert it.

In cases of extreme hardship, in which the Court can find no basis for judicial intervention, the Court may nonetheless remand the matter to the administrative authorities for reconsideration of the possibility of some relief. Pimental-Navarro vs. Del Guercio, 256 F. 2d 877 (9th Cir. 1958). In another case, involving review of a deportation order, the Court remanded the case to enable the alien to present evidence refuting accusations that would have impeded her procurement of a visa for return to the United States. Rose vs. Woolwine, 344 F. 2d 993 (4th Cir. 1965). Another Court found itself powerless to direct such a remand, although suggesting that the possibility of some relief might be considered by the Immigration Service. Loza-Bedoya vs. Ins, 410 F. 2d 343 (9th Cir. 1969). Similarly, another Court found that the violation was minimal and the alien's conduct excusable, and noting the "harsh consequence" and "severe hardship" for the alien and his wife, deferred issuance of its mandate for 90 days, suggesting that the Immigration Service should consider placing the alien in a deferred action category. David vs. INS, 548 F. 2d 219, 223 (8th Cir. 1977).

Although declaring that the record revealed no abuse of discretion, another Court suggested that a Motion for Reopening the Administrative Proceeding might be warranted on the basis of new circumstances that had developed since the original decision. Zulbeari vs. INS, 963 F. 2d 999, 1001 (7th Cir. 1992). Another Court, declining to rule on a claim that there had been ineffective representation by counsel in inadequately supporting an asylum claim, suggested that this claim should first be presented in a Motion to Reopen addressed to the BIA, and stayed deportation for 60 days and for such additional time as the BIA required to decide such a motion. Roque-Carranza vs. INS, 778 F. 2d 1373, 1379 (9th Cir. 1985).

Therefore, with regards to the new evidence presented by Ms. Kaweesa, this Honorable Court should remand this matter to the Department of Homeland Security. The Department of Homeland Security should review Ms. Kaweesa's legitimate claims for Political Asylum and under the Torture Convention.

### V.  MS. KAWEESA'S RELIEF UNDER THE CONVENTION AGAINST TORTURE

The Supreme Court has held that habeas corpus jurisdiction under 28 U.S.C. § 2241 remains available for collateral challenges of final orders of removal for claims concerning "errors of law and erroneous interpretation of statutes." INS vs. St. Cyr., 533 U.S. 289, 302 (2001). Habeas Corpus review also encompasses claims that constitutional rights have been violated. Id.; St. Fort vs. Ashcroft, 329 F. 3d 191, 203 (1st Cir. 2003). A noncitizen may also raise on habeas corpus jurisdiction the refusal of the agency to even consider him/her for a certain form of relief. Id. At 203 (holding that district courts have jurisdiction under the general habeas corpus statute to consider claims arising under the Convention against Torture).

Ms. Kaweesa has a prima facie case to be eligible for withholding of removal under the Torture Convention. Yet, the BIA failed to mention, much less analyze, this claim. While there is some overlap in the elements of a Political Asylum and Torture

Convention claim, they are distinct causes of action with distinct legal requirements. For instance, there is no nexus requirement for Torture Convention claims and no 1 year filing deadline. Most significantly, withholding under the Torture Convention, unlike Political Asylum, is mandatory if the applicant meets the standards.

It is uncertain from the BIA's decision whether its reasons for denying Ms. Kaweesa's Political Asylum claim would pertain to her Torture Convention claim as well. More specifially, the BIA put great weight on Ms. Kaweesa's delay, a discretionary factor since Motions to Reopen for new evidence are not subject to time deadlines, but as noted above, withholding under the Torture Convention is mandatory when the legal standards are met. In addition, the BIA also seemed troubled by why the government of Uganda would still be looking for Ms. Kaweesa after all of these years, a concern that speaks more to Political Asylum requirements rather than the Torture Convention requirements.

Most importantly, it is impossible to know for certain from the BIA's opinion whether Ms. Kaweesa was prejudiced by this oversight. It is impossible to know whether the BIA took into account the above factors in adjudicating a claim under the Torture Convention. 8 C.F.R. § 208 16(c)(3).

In the case at hand, the BIA's decision provides no evidence that it took these factors into consideration, and Ms. Kaweesa should not be asked to accept as a matter of faith that her claim was, in fact, considered. The BIA's failure to consider the petitioner's eligibility for a mandatory form of relief is in violation of the petitioner's statutory right and constitutes a legal error which gives rise to the Court's habeas corpus jurisdiction. Furthermore, the Court also has habeas corpus jurisdiction under 28 U.S.C. § 2241 because the BIA's failure to consider her Torture Convention claim was a violation of her Procedural Due Process right.

13

## **Conclusion**

WHEREFORE, Ms. Kaweesa prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;
2) Grant Petitioner relief on all issues; and
3) Grant any other and further relief which this Court deems just and proper.

Respectfully submitted,
Alien Juliette Kaweesa
By her attorneys,

_____
Ara H. Margosian
Law Offices of Ara H. Margosian, P.C.
BBO#560556
415 Mt. Auburn Street
Watertown, MA 02472
(617) 926-8944

_____
Mark E. Pelosky, Esq.
Law Offices of Mark Pelosky, P.C.
BBO#635022
375 Broadway St, St207
Chelsea, MA 02150
(617) 884-8100

Date: June 28, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I, _Wilberforce Katereggs_, forwarded a true copy of the foregoing Memorandum of Law via hand delivery to the following:

United States District Court for the District of Massachusetts
Clerk's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210


Mark Grady
Assistant U.S. Attorney
U.S. Attoney's Office
John Joseph Moakley U.S. Court House
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210


Dated: June 28, 2004

_____
(signature)