UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIETTE NALUBWAMA KAWEESA,<br>    Petitioner,<br><br>v.<br><br>JOHN D. ASHCROFT,<br>BRUCE CHADBOURNE, and<br>KATHLEEN M. DENNEHY,<br>    Respondents. | CIVIL ACTION NO:<br>Docket # 04-10513-WGY |

### RESPONDENTS' MEMORANDUM OF LAW IN RESPONSE TO THIS COURT'S REQUEST FOR ADDITIONAL BRIEFING

### Introduction

  The Respondents respectfully submit this memorandum of law in response to this Court's request for additional briefing.

### Facts

  Petitioner is a native and citizen of Uganda who was admitted to the United States as a visitor for pleasure on August 2, 1994, authorized to remain in the United States until February 1, 1995. She has remained in the United States unlawfully since then.

  Removal proceedings were begun against petitioner by administrative Notice to Appear dated February 23, 1999, and petitioner was charged with deportability under 8 U.S.C. §1227(a)(1)(B), as being an alien who has remained in the United States for a time longer than permitted. See Notice to Appear (attached hereto as Exhibit 1.) The Notice advised the Petitioner that a failure to appear at the date and time on the notice could result in *in absentia* removal. See Exhibit 1.

  Petitioner's removal hearing was scheduled for May 13, 1999, but she failed to appear and was ordered removed *in absentia* on that date. The Petitioner does not contest that she

received notice of the date. See Letter of Petitioner, dated May 13, 1999 (attached hereto as Exhibit 2).

Represented by attorney Daniel Cashman, Petitioner moved to reopen proceedings before the Immigration Judge ("IJ"). By decision dated June 23, 1999, the IJ denied the motion to reopen, finding that the Petitioner had failed to establish "exceptional circumstances" accounting for the failure to appear. See Decision of the IJ, dated June 23, 1999 (attached hereto as Exhibit 3). Petitioner appealed the IJ's denial to the Board of Immigration Appeals ("BIA"), and by decision dated May 6, 2002, the BIA summarily affirmed the denial of the IJ.[1] See Petitioner's Brief to the BIA, dated September 17, 1999; and BIA's Decision, dated May 6, 2002 (attached hereto as Exhibits 4 and 5, respectively).

Represented by new counsel, Attorney Broderick, Petitioner submitted a second motion to reopen in July of 2003, supported by an affidavit of the Petitioner. See Motion to Reopen, dated July 25, 2003, and Affidavit of Juliette Kaweesa, dated July 9, 2003 (attached hereto as Exhibits 6 and 7,[2] respectively). By way of that motion the Petitioner sought to reopen her

---

[1] The BIA's summary affirmance procedure is consistent with statutory and constitutional requirements and has been upheld by every Circuit Court to review the issue. See Zhang v. DOJ, 362 F.3d. 155, 157 (2nd Cir. 2004); Yuk v. Ashcroft, 355 F.3d 1222, 1229-32 (10th Cir. 2004); Loulou v. Ashcroft, 354 F.3d 706, 708-09 (8th Cir. 2003); Dia v. Ashcroft, 353 F.3d 228, 238-45 (3rd Cir. 2003); Denko v. INS, 351 F.3d 717, 725-30 (6th Cir. 2003); Falcon Carriche v. Ashcroft, 350 F.3d 845, 849-52 (9th Cir. 2003); Georgis v. Ashcroft, 328 F.3d 962, 966-67 (7th Cir. 2003); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1288-89 (11th Cir. 2003); Soadjede v. Ashcroft, 324 F.3d 830, 831-33 (5th Cir. 2003); Albathani v. INS, 318 F.3d 365, 375-79 (1st Cir. 2003).

[2] Two copies of the affidavit are attached, one, submitted by Petitioner in this Petition (missing page two) and the copy from the government's A-file. The copy from the A-file is the signed original filed with the Board.

immigration proceedings based upon allegations of changed circumstances.[3]  Specifically, Petitioner alleged that, in August 2001, plainclothes individuals in an army truck had assaulted her adult son after inquiring of her whereabouts.  Id.  That motion was denied by the BIA in November 2003, as untimely, on the grounds that the Petitioner had not met her prima facie burden (noting that the Petitioner had not explained why she had waited almost two years from the incident to seek reopening), and because the BIA deemed incredible[4] Petitioner's allegations (noting that the Petitioner had been allowed to emigrate to the United States in 1994 and that Petitioner "failed to explain why anyone would still be interested in her after nearly a ten year absence.").  See Decision of the BIA, dated November 12, 2003 (attached hereto as Exhibit 8).[5]

In February or March of 2004, the Petitioner consulted with attorney Alexandre Dufrense of Boston College Legal Services, and Attorney Dufrense filed the instant habeas petition and

---

[3]The relevant regulations, ordinarily restrict an alien to one motion to reopen that must be filed within 90 days of the BIA's decision, but they allow for motions to reopen that are otherwise numerically and temporally barred to be filed where an alien is seeking asylum based upon changed circumstances "if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."  See 8 C.F.R. § 1003.2(c)(2).

[4]Habeas jurisdiction does not encompass review of factual determinations.  See 28 U.S.C. §2241; Ruckbi v. INS, 285 F.3d 120, 124 n.6 (1st Cir. 2002); Carranza v. INS, 277 F.3d 65, 72 (1st Cir. 2002); Goncalves v. Reno, 134 F.3d 110, 113-114 (1st Cir. 1998) (noting that §2241 review is limited to custody in violation of the "Constitution or laws or treaties of the United States" and that "pure issue[s] of law" may be raised in habeas).  See also, Sol v. INS, 274 F.3d 648, 650 (2nd Cir. 2001) ("[t]his sort of fact- intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors."); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir.1999) ("Only questions of pure law will be considered on § 2241 habeas review.  Review of factual or discretionary issues is prohibited."); Lopez v. Ashcroft, 267 F.Supp.2d 150, 153 (D. Mass. 2003).

[5]Attorney Broderick has submitted an affidavit, dated March 16, 2004, evidencing that she discussed the possibility of appeal with Ms. Kaweesa, but "was not hopeful about the success of further appeals."  See Affidavit of Elizabeth Broderick, dated 3-16-04, ¶6 (attached hereto as Exhibit 9).

request for a stay of removal. With the assent of the United States, the Petitioner's removal was delayed pending the outcome of a further motion to reopen before the BIA.

The most recent Motion to Reopen, filed April, 14, 2004, argued: (1) that the Petitioner established "exceptional circumstances" to warrant reopening of the *in absentia* order based upon affidavits evidencing that the Petitioner had forgotten the date because she suffered from "Post Traumatic Stress Disorder;"[6] and (2) sought reopening based upon materially changed circumstances and a prima facie showing of eligibility for relief under the Convention Against Torture. See Petitioner's Motion to Reopen, dated April 14, 2004 (attached hereto, without exhibits, as Exhibit 10).

That Motion was denied by the BIA on May 3, 2004. See Decision of the BIA, dated May 3, 2004 (attached hereto as Exhibit 11). The BIA found that: (1) the third motion to reopen was untimely and numerically barred; and (2) the Petitioner had not established that the evidence submitted could not have been submitted in a timely manner so as to allow for waiver of the temporal and numerical limitations.[7] The BIA further denied the motion as a matter of

---

[6]This Court has determined that it lacks jurisdiction to review this decision because of a failure to exhaust. See Order, dated June 14, 2004, p. 3. As the Court has reserved the issue of whether habeas may nevertheless allow for review of unexhausted claims, id., the Respondents briefly note that the attempt to reopen based upon "exceptional circumstances" in April 2004, is temporally and numerically barred (no exception exists as to this ground), see 8 C.F.R. §1003.2(c), and is also barred because the Petitioner had a full and fair opportunity to previously argue this issue in her first (and second) motion(s) to reopen. Id. ("nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing."). The "circumstances" alleged, PTSD, existed at the time of the original proceeding.

[7]The temporal and numerical limitations can be waived for a claim of changed circumstances "if . . . [the] evidence [submitted] is material and was not available and could not

discretion.  Id.

Attorney Dufrense withdrew from this matter citing a conflict between her obligation to her client and her responsibilities to this Court.[8]  Prior to withdrawal, Attorney Dufresne informed the Petitioner of her right to appeal to the First Circuit.  See Docket 04-10513, #18 ¶3.  The Petitioner elected not to appeal the May 3, 2004, decision to the First Circuit.

Subsequent to Attorney Dufresne's withdrawal, this Court requested additional information from the parties relative to whether the Petitioner had been informed of her rights to appeal the various decisions of the Board of Immigration Appeals.  See Docket #16.

Petitioner filed an affidavit alleging that her first attorney, Attorney Cashman, never informed her of a right to appeal the BIA's decision in May of 2002.  Kaweesa Affidavit, Docket #19, ¶10-12 ("Kaweesa Affidavit").  As a result of Attorney Cashman's failure to contact Petitioner, Petitioner claims that she consulted with Alex Almondel, an individual who held himself out as an immigration attorney.  Kaweesa Affidavit, ¶13-23.  Mr. Almondel represented to the Petitioner that he had filed an appeal of the adverse decision of the BIA to the First Circuit.  Id., ¶17.[9]  The Petitioner discovered, however, in April 2003, that Mr. Almondel was not an attorney and had never filed an appeal on behalf of the Petitioner.  Id., ¶22-24.

Thus, in July of 2003, she consulted with Attorney Broderick and filed a further motion to reopen.  As noted, this motion was denied by the BIA.  According to the Petitioner, she did

---

have been discovered or presented at the previous hearing." 8 C.F.R. §1003.2(c)(3)(ii).

[8]Petitioner incorrectly asserts that the withdrawal was based upon limited resources.  Petitioner's Memorandum of Law, p. 4.

[9]This is slightly different from the version presented in an earlier affidavit alleging the Mr. Almondel had "sent a letter to the immigration court."  See Petitioner's Affidavit, dated March 16, 2004, ¶7 (attached hereto as Exhibit 12).

not appeal because attorney Broderick informed her that "there was nothing left to do on [Petitioner's] case." Kaweesa Affidavit, ¶27.[10]

### Procedural Status

On June 14, 2004, this Court entered an order relative to the issue of subject matter Jurisidction. See Order dated June 14, 2004. By way of the Order, this Court concluded that it lacked jurisdiction to review the BIA's most recent, May 3, 2004, decision, as the proper avenue for review of that decision would have been an appeal to the First Circuit. Id. at 4. The Court further concluded that it lacked jurisdiction to review the November 12, 2003, Decision of the BIA as the Petitioner was aware, at that time, of her right to appeal. Id. at 3.[11]

This Court questioned, however, whether jurisdiction existed to review the May 13, 1999, *in absentia* removal order, the June 26, 1999, denial of the Petitioner's Motion to Reopen and the BIA's May 6, 2002, summary affirmance of that decision. Id. at 3-4. Accordingly, this Court has requested additional briefing from the parties as to five questions:

> (1) Assuming that Kaweesa's lawyer (Mr. Almondel) failed to file the First Circuit appeal he told her he had filed, does this Court have habeas jurisdiction to review the BIA's decision, and to address legal claims that were beyond the BIA's power to address?;
>
> (2) Does jurisdiction only exist if the lost opportunity to appeal resulted in prejudice or likely resulted in prejudice?;

---

[10]Oddly, the July 2003, motion to reopen and the Petitioner's affidavit in support make no reference to Mr. Almondel to explain the delay in its filing. See Exhibits 5 and 6. Any claim Petitioner was unaware of the possibility of appeal of the BIA's decision on that motion is belied by Attorney Broderick's Affidavit. See Exhibit 9, ¶6.

[11]This Court relies upon Petitioner's assertion that Mr. Almondel represented that he had appealed the May 2002 decision to the First Circuit. Id. at 3. The Respondents note that Attorney Broderick also discussed the possibility of appeal with the Petitioner. See Exhibit 9, ¶6.

(3) Was there prejudice or likely prejudice, and if so, how?;

(4) If the Court does have jurisdiction, what is the scope of that jurisdiction?; and

(5) In performing the statutory interpretation necessary to answer these questions, what role, if any, do the following play in resolving statutory gaps, conflicts, and ambiguities – international treaties, customary international law, the presumption against interpreting statutes to violate the United States' international legal obligations, the presumption in favor of judicial review of administrative action, the presumption in favor of habeas jurisdiction, the presumption against implied repeals, the constitutional avoidance cannon, the requirement that courts interpret statutes favorably to immigrants, the purpose of the immigration statutes and regulations, and legislative history regarding the immigration statutes?

Id.

## Argument

**I. The Petitioner Fails To Establish Any Colorable Claim Of Legal Or Constitutional Error With Regard To The IJ's *In Absentia* Removal Order**

    A.    <u>There Is No Statutory Or Constitutional Error In The IJ's *In Absentia* Order</u>

Habeas jurisdiction is limited to errors of legal or constitutional dimension. <u>INS v. St. Cyr</u>, 533 U.S. 289, 302 (2001) (Habeas review is appropriate for allegations that detention was "based on errors of law, including the erroneous application . . . of statutes.") Thus, the question of this Court's jurisdiction is intertwined with merits of the Petitioner's challenge, *i.e.*, absent legal or constitutional error, there can be no habeas jurisdiction. As such, the Respondent briefly addresses the merits of the Petitioner's claim.

The imposition of the original *in absentia* removal order complied in all respects with legal and constitutional requirements. Title 8 U.S.C. § 1229a, sets out the procedure applicable to *in absentia* removal proceedings.

> (A) Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed

>in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2) of this section). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

8 U.S.C. § 1229a(b)(5)(A). The provision imposes two conditions for the entry of an *in absentia* removal order: (1) adequate notice; and (2) a failure to appear. The Petitioner concedes both. Thus, the Petitioner cannot credibly argue that she was not appropriately subject to *in absentia* removal pursuant to 8 U.S.C. § 1229a(b)(5)(A).

There simply is no statutory or constitutional error in the Immigration Judge's May 13, 1999, order.

>B.    This Court Lacks Habeas Jurisdiction To Review The IJ's In Absentia Removal Order

To alleviate the potential injustice of *in absentia* removals, Congress specifically legislated a limited remedy, expressly conferring discretion upon the IJ:

>Such an order *may* be rescinded only--
>
>(i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section), or (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

8 U.S.C. § 1229a(b)(5)(C) (emphasis added). Subsection (e)(1) defines "exceptional circumstances" as "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, *but not including less compelling*

*circumstances*) beyond the control of the alien." Id. (emphasis added).[12]

In response to a motion to reopen filed by the Petitioner pursuant to this provision, the IJ found that the Petitioner's allegations that she forgot the correct date failed to demonstrate "exceptional circumstances" warranting reopening under 8 U.S.C. § 1229a(b)(5)(C).[13] See Exhibit 3.

The denial of this Petitioner's first motion to reopen is a discretionary decision, and consequently, outside the scope of habeas review. Congress created no statutory right to have a motion to reopen granted in these circumstances, expressly legislating that the determination was discretionary. See 8 U.S.C. § 1229a(b)(5)(C); Lopez v. Ashcroft, 267 F.Supp.2d 150, 153 (D. Mass. 2003) (finding the decision whether to grant a motion to reopen an *in absentia* order discretionary). The denial of a motion to reopen *in absentia* removal proceedings does not constitute a "colorable claim of legal error" cognizable in habeas. Saint Fort v. Ashcroft, 329 F.3d 191, 203 (1st Cir. 2003) (an alien "may not challenge the agency's decision to exercise or not exercise its discretion to grant relief.").

---

[12] The First Circuit has recognized ineffective assistance of counsel as an exceptional circumstance. See Saakian v. I.N.S., 252 F.3d 21 (1st Cir. 2001); Jobe v. INS, 238 F.3d 96, 98 n.3 (1st Cir. 2001). In May of 1999, when the Petitioner failed to appear, she was acting *pro se*. It is axiomatic that the Petitioner cannot argue ineffective assistance of counsel as to matters upon which the Petitioner was acting *pro se*. See, e.g., Faretta v. California, 422 U.S. 806, 834 n.46 (1975)(in the context of a criminal appeal, the Supreme Court has noted "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Thus, as to the initial order of *in absentia* removal, ineffective assistance may not provide a basis for review or a basis for finding "exceptional circumstances."

[13] The Ninth Circuit has provided a brief description of the legislative history of this provision in Tang v. Ashcroft, 354 F.3d 1192,1194 n.3 (9th Cir. 2003).

**II.     The Petitioner's Allegations As To The Conduct Of Mr. Almondel Raise An Issue Within This Court's Habeas Jurisdiction, However, That Claim Fails On Its Merits**

  A.     <u>The Petitioner's Allegations As To Mr. Almondel's Conduct Raise a Claim Within The Scope Of This Court's Habeas Jurisdiction</u>

In light of the absence of legal error in the underlying decision, the Respondents turn to this Court's first question. Does the conduct of Mr. Almondel, fraudulently representing that he had filed an appeal, raise a claim (ineffective assistance of counsel) within the scope of habeas jurisdiction?[14] Indisputably, yes.[15]

"Deportable aliens possess a Fifth Amendment due process right to be free from incompetent legal representation which renders their deportation proceedings 'fundamentally unfair.'" <u>Betouche v. Ascroft</u>, 357 F.3d 147, 149 (1st Cir. 2004) (citing <u>Hernandez v. Reno</u>, 238 F.3d 50, 55 (1st Cir. 2001)); <u>see also</u> 8 U.S.C. § 1362 (according aliens a statutory right to

---

[14]In response to the Court's second question, Respondents believe that jurisdiction exists to adjudicate the claim regardless of whether the Petitioner has alleged facts which would entitle her to relief. If, as is the case here, the claim of ineffective assistance fails on the merits, this Court is not deprived of jurisdiction.

[15]The Respondents also wish to address the Court's apparent concern regarding the Respondents' failure to inform the Petitioner of the right of appeal to the First Circuit. <u>See</u> Order, dated June 14, 2004, p. 4 ("if the government's failure to inform Kaweesa of her right to appeal to the First Circuit was fundamentally unfair . . ."). To the extent that the Petitioner was not informed of the right to appeal, such claims are properly raised as claims of ineffective assistance of counsel, <u>not</u> claims of government misconduct.
   The United States has no obligation to inform parties, even *pro se* parties, of procedural or substantive rules. "The Constitution does not require judges--or agencies, for that matter--to take up the slack when a party elects to represent himself." <u>Eagle Eye Fishing Corp. v. U.S. Department of Commerce</u>, 20 F.3d 503, 506 (1st Cir. 1994) (citing <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183-84 (1984)); <u>see also</u>, e.g., <u>FDIC v. Anchor Props.</u>, 13 F.3d 27, 31 (1st Cir.1994); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997); <u>Lefebvre v. Commissioner of Internal Revenue</u>, 830 F.2d 417, 419 (1st Cir. 1987).
   No caselaw, statute or regulation of which the Respondents are aware has imposed an obligation upon Respondents to inform a represented alien of the filing deadline established by 8 U.S.C. §1252(b)(1).

counsel at their expense).  A violation of either the constitutional or statutory right to counsel constitutes a claim actionable in habeas.  INS v. St. Cyr, 533 U.S. 289, 302 (2001).

      B.      The Petitioner, However, Does Not Establish A Prima Facie Claim For Relief Under This Theory

At the outset, it must be noted that the Petitioner's argument, with regard to the conduct of Mr. Almondel, is fundamentally flawed.  In reviewing the alleged conduct of Mr. Almondel, it cannot be presumed that the Petitioner was not appropriately represented by Attorney Cashman.  Stated another way, before claiming that she was misled by Mr. Almondel, Petitioner must first make a prima facie showing to substantiate her allegations that she was ignored by Attorney Cashman.  See Docket #19, ¶10-13 (alleging that Attorney Cashman never returned her calls after informing her of the May 2002, BIA decision)

Before this Court may reach the merits of the Petitioner's claim as to Mr. Almondel, the burden is on the Petitioner to establish ineffective assistance of Attorney Cashman.  This burden cannot be met by a simple affidavit of the Petitioner.  The First Circuit requires "(1) an affidavit describing in detail the agreement between the alien and h[er] counsel regarding the litigation matters the attorney was retained to address; (2) evidence that the alien informed h[er] counsel as to the alien's ineffective assistance allegations and afforded counsel an opportunity to respond; and (3) evidence that the alien had either filed a complaint with the appropriate disciplinary authority regarding the attorney's ethical or legal misfeasance, or a valid excuse for failing to lodge such a complaint."  Betouche v. Ascroft, 357 F.3d 147, 149 (1st Cir. 2004) (citing Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988)).[16]

---

[16] See also Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001) (expressing approval of Lozada requirements); Hamid v. Ashcroft, 336 F.3d 465, 468-69 (6th Cir. 2003) (endorsing

Here Petitioner has utterly failed to satisfy her prima facie burden. There no evidence that Petitioner has informed (or even attempted to inform) Attorney Cashman of her allegations of ineffective assistance, *i.e.*, failure to pursue, or notify Petitioner of the right to, appeal; there is no evidence that she has afforded him an opportunity to respond; and, there is no evidence that the petitioner has reported the alleged complaints to the appropriate disciplinary authority.

In the absence of prima facie evidence, as required by this Circuit's precedent, the alleged conduct of Mr. Almondel is irrelevant. Because Petitioner's assertion of ineffective assistance by Attorney Cashman is not properly supported, it must be presumed that his representation was effective, and, therefore, that his failure to appeal on her behalf was legally effective.[17] Petitioner cannot simply ask this Court to presume the truth of her self serving allegations.

> Since a delay in deportation may itself constitute a substantial boon to an alien already subject to a final deportation order, there exists a significant prospect that entirely meritless and/or collusive ineffective assistance claims may be filed for purely dilatory purposes. . . . . The Lozada notice requirement serves both to notify a petitioner's former counsel of the ineffective assistance allegations and to give former counsel an opportunity to contest them before the IJ. The participation of a petitioner's former counsel, in turn, provides a mechanism by which the IJ may more accurately assess the merits of a petitioner's ineffective assistance claims.

Betouche, 357 F.3d at 150-151 (citations and quotations omitted). See also, Rodriguez-Lariz v. I.N.S., 282 F.3d 1218, 1226-1227 (1st Cir. 2002)("These 'Lozada factors' are intended to ensure

---

Lozada ); Xu Yong Lu v. Ashcroft, 259 F.3d 127, 133 (3rd Cir. 2001) (same); Lara v. E.M. Trominski, 216 F.3d 487, 497-98 (5th Cir. 2000) (same); Lata v. INS, 204 F.3d 1241, 1245-46 (9th Cir. 2000) (same); Stewart v. INS, 181 F.3d 587, 596 (4th Cir. 1999) (same).

[17]Indeed, it is entirely reasonable that Attorney Cahsman, like Attorney Broderick, simply "was not hopeful about the success of further appeals." See Exhibit 9, ¶6,

both that an adequate factual record exists for an ineffectiveness complaint *and that the complaint is a legitimate and substantial one*.") (emphasis added) (quotation and citation omitted).

It cannot simply be presumed that Attorney Cashman provided ineffective assistance as is alleged by the Petitioner. The burden is on the Petitioner to come forward with evidence to substantiate her claim. Betouche, supra. This, she has not done.

### C. The Court Lacks Jurisdiction Because The Petitioner Has Procedurally Defaulted The Claim of Ineffective Assistance

Upon the discovery of fraud by Mr. Almondel, it was incumbent upon the Petitioner to bring such allegations, to the extent that the Petitioner was prejudiced, to the attention of the BIA. Bernal Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999)(ineffective assistance of counsel claim requires exhaustion because BIA could hear the claim); Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992) ("Issues not raised before the Board may not be raised for the first time upon judicial review of the Board's decisions.").

The Petitioner allegedly became aware that Mr. Almondel was not an attorney in April of 2003. Docket #19, ¶22-24. Despite this knowledge, the July 2003, Motion to Reopen contained no reference whatsoever to Mr. Almondel. See Exhibit 6 and 7.[18] Represented by counsel, the

---

[18] Thus, the allegations as to the Petitioner's reliance upon Mr. Almondel are seemingly of recent vintage. As noted, the Petitioner never mentioned Mr. Almondel in her Motion to Reopen or affidavit filed in July 2003, despite alleging that she discovered he was not an attorney in April 2003. See Exhibits 6 and 7 and Docket #19. The absence of such reference is particularly troubling when reviewed in conjunction with the BIA's decision (noting, *inter alia*, that the Petitioner had offered no evidence as to why her second motion to reopen was filed one year late), the absence of any reference to Mr. Almondel in the recent affidavit of Attorney Broderick, see Exhibit 9, and the absence of Lozada evidence as to the conduct of Attorney Cashman.

Petitioner had a full and fair opportunity to present these facts to the BIA in her July 2003 Motion to reopen. She, inexplicably, elected not to do so.

The issue has never been presented to the BIA and, thus, cannot be considered by this Court in habeas.

> D. If This Court Were To Exercise Jurisdiction Over The Claim of Ineffective Assistance of Counsel, The Remedy For Such A Violation Would Be Equitable Tolling to Allow An Appeal That Would Fail On Its Merits

Assuming, that the Petitioner's "attorney," Alex Almondel, deliberately lied to the Petitioner about filing an appeal of the first motion to reopen, (and that Attorney Cashman similarly failed to provide effective assistance) there is no reason to believe that this resulted in prejudice to the Petitioner. An ineffective assistance claim requires a demonstration of prejudice. Rodriguez-Lariz v. I.N.S., 282 F.3d at 1226 ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. . . . Due process challenges to deportation proceedings require a showing of prejudice to succeed.") (quotation and citation omitted).

Fraud, such as the alleged conduct of Mr. Almondel, would entitle the Petitioner to equitable tolling of the time to file an appeal. See Rodriguez-Lariz v. I.N.S., 282 F.3d at 1224-1225 ("Here, Torres, who was not an attorney, missed the deadline for filing the application for suspension of deportation and then lied about having done so, assuring petitioners that it was the IJ that had lost the application and that the IJ's error could be rectified on appeal. Torres then compounded his mistakes and misrepresentations by advising the filing of a motion for reconsideration that prejudiced petitioners' claims. Torres' actions constitute the type of

fraudulent representation that triggers equitable tolling. . . "). "The numerical limit on motions to reopen . . .may be waived (or tolled) in cases where a petitioner has been defrauded by an individual purporting to provide legal representation." Id. at 1224.

Had an appeal been pursued, however, it would have failed. The Petitioner has not established "exceptional circumstances," and consequently, an appeal would be fruitless. The Petitioner alleged, as grounds for her first motion to reopen, that she thought the date of the hearing was May 17, 1999, not May 13, 1999. See Exhibits 2, 3 and 4. In accord with the definition provided by statute, the IJ concluded that the failure to appear was not "beyond the control of the alien."

A failure to appear because of forgetfulness or mistake is clearly beyond the statutory definition. See Herbert v. Ashcroft, 325 F.3d 68, 72 (1st Cir. 2003) ("We would agree with the INS that if there were meaningful delay and if this were a simple situation of Herbert *miscalculating* how long it would take him to get to the hearing room on a winter's day in Boston, this rationale would not suffice to overturn a denial of a motion to reopen.") (emphasis added); Valencia Fragoso v. INS, 321 F.3d 1204, 1205 (9th Cir. 2003) (upholding *in absentia* removal, the court stated that the fact that a Petitioner *"thought"* the hearing was at 1:00 p.m. rather than 8:30 a.m. is inadequate to show "exceptional circumstances");[19] Thomas v. INS, 976 F2d 786 (1st Cir. 1992) (no abuse of discretion in denying motion to reopen for an alien who was ten minutes late.)[20]  See also, de Morales v. INS, 116 F.3d 145, 148-49 (5th Cir.1997) (upholding

---

[19] In citing to Ninth Circuit law, the petitioner inappropriately cites unpublished opinions in contravention of Ninth Circuit Rules. See Ninth Circuit Rule 36-3.

[20] "The BIA, like other agencies in the modern administrative state, has a keen interest in securing the orderly disposition of the numerous claims which enter the vast apparatus of the

the BIA's determination that the mechanical failure of the petitioner's car on the way to the hearing did not constitute an exceptional circumstance within the meaning of the Act); Sharma v. INS, 89 F.3d 545, 547-48 (9th Cir.1996) (declining to find exceptional circumstances where the petitioners arrived at their deportation hearing between 45 minutes and 1 hour late due to traffic congestion and trouble finding parking).[21]

**III.  The Petitioner's Allegations As To A Potential Violation Of The Convention Against Torture State A Claim Within This Court's Habeas Jurisdiction, However, That Claim Fails**

  A.   Claims Alleging a Violation of the Convention Against Torture State A Claim Within This Court's Habeas Jurisdiction

The Petitioner also argues that the Convention Against Torture ("CAT")[22] creates an

---

INS. Given these institutional concerns and the deferential standard of review we must use, it would be extravagant for a court which so vigorously enforces its own rules, including deadlines, to condemn the BIA as having abused its broad discretion in not providing the alien with another hearing." Id. at 790 (quotations omitted).

[21]To the extent, the Petitioner cites to allegations that she was suffering from Post Traumatic Stress Disorder as the cause of her "mistake" and/or as grounds for a finding of "exceptional circumstances," such reliance is misplaced. That evidence was not submitted to the IJ, or the BIA, (indeed, it was not created) until April of 2004. As such, it cannot rationally be considered in reviewing the likely prejudice resulting from a failure to appeal the IJ's June 23, 1999, decision or the BIA's May 6, 2002, decision. See Fesseha v. Ashcroft, 333 F.3d 13, 18 (1st Cir. 2003) (in conducting review the Circuit Court "examine[s] only the administrative record") (citing 8 U.S.C. § 1252(b)(4)(A)). See also, Mills v. Apfel, 244, F.3d 1, 5 (1st Cir. 2001) ( in the context of reviewing an administrative decision by the Social Security Administration, the court noted "[t]o weigh the new evidence as if it were before the ALJ would be, as one court fairly observed, a very "peculiar" enterprise, . . . and (to us) one that distorts analysis.") (citation omitted).

Indeed, as such evidence is properly reviewed only in the context of a review of the BIA's May 3, 2004, decision, and, as the Petitioner has knowingly foregone an appeal of that decision, it is certainly questionable whether this Court may consider that evidence at all in the context of habeas review. Regardless, such evidence is clearly not cognizable in determining whether the First Circuit would have overturned the original decision.

[22]To the extent that the Petitioner would rely upon the International Covenant on Civil and Political Rights, the viability of such a claim is severely undermined by the recent Supreme Court opinion in Francisco Sosa v. Alvarez-Machain, — U.S. —, 2004 WL 1439873 (June 29,

unwaivable right to a hearing on the merits of a prima facie claim.  Petitioner's Memorandum, p. 12.  Presumably, the argument is premised upon Article III of the CAT, which provides:

> No State party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

Torture Convention, Art. III, §1.  While treaties do not create actionable rights unless they are self-executing, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), § 2242, Pub.L. No. 105-277, 112 Stat. 2681, 2681-822 (Oct. 21, 1998), implemented Article III of the CAT in the United States.[23]

An alleged violation of a treaty is certainly cognizable in habeas.  "The CAT has been implemented in the United States through FARRA and the subsequent regulations. . . .  FARRA and the regulations are now the positive law of the United States, and, as such, are cognizable under habeas."  Saint Fort v. Ashcroft, 329 F.3d 191, 202 (1st Cir. 2003).

> B.    That This Court Has Jurisdiction Does Not Mandate A Finding For the Petitioner, Nothing Prohibits Reasonable Procedural Limits on the Exercise of Rights Under the CAT

Despite the foregoing, the First Circuit has recognized that the protections afforded by

---

2004).  "Several times, indeed, the Senate has expressly declined to give the federal courts the task of interpreting and applying international human rights law, as when its ratification of the International Covenant on Civil and Political Rights declared that the substantive provisions of the document were not self- executing. . . .  [A]lthough the Covenant does bind the United States as a matter of international law, the United States ratified the Covenant on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts."  Id. at *20 and *23.

[23] See FARRA § 2242(a), 112 Stat. at 2681-822 ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture. . . .").

the CAT are subject to reasonable procedural limitations.

> Foroglou's main argument is that the Board's time limit on petitions to reopen is itself invalid because it would result in denying relief to deportees who might then suffer torture, contrary to the Convention Against Torture and to the policies embodied in federal legislation and regulations that implement the convention or otherwise protect the rights of aliens.[24] The short answer to this argument is that Foroglou points to nothing in the convention or legislation that precludes the United States from setting reasonable time limits on the assertion of claims under the convention in connection with an ongoing proceeding or an already effective order of deportation. Even in criminal cases, constitutional and other rights must be asserted in a timely fashion.

Foroglou v. Reno, 231 F.3d 111, 113 (1st Cir. 2001).

The limitation at issue, requiring an alien to appear at a specified time and date, is entirely reasonable and indistinguishable from the time or numerical limits considered in Foroglou. Such limits reflect a reasonable accommodation of competing interests, judicial efficiency (insuring that aliens do not unduly delay removal proceedings by failing to appear) and the desirability of ensuring that every alien has some opportunity to apply for CAT protection (by requiring notice of the hearing).[25] Moreover, unlike the regulatory time and numerical limitations that were recognized as valid in Foroglou,[26] the procedural restriction at issue here is expressly created by Act of Congress. See 8 U.S.C. §1229a(b)(5)(A).

"The respondent must be given a reasonable opportunity to be present at the proceeding, but if the respondent fails to avail himself of that opportunity the hearing may proceed in his

---

[24] FARRA § 2242(b) specifically delegated authority to the Attorney General to implement regulations giving effect to the CAT.

[25] Implementing regulations provide for an exception to time and numerical limitations on motions to reopen based upon a showing of "changed circumstances." See 8 C.F.R. §1003.2(c)(2), (3)(ii).

[26] It is further worthy of note that in denying the several motions to reopen filed by this Petitioner, the BIA relied upon the limitations specifically upheld in Foroglou.

absence." <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1038-39 (1984) (citation and quotation omitted); <u>see</u> also, <u>Jobe v. I.N.S.</u>, 238 F.3d 96 (1st Cir. 2001) (upholding removal of an alien with a pending asylum petition based upon a failure to appear); <u>Tang v. Ashcroft</u>, 354 F.3d 1192 (9th Cir. 2003) (upholding *in absentia* removal of an alien seeking relief under CAT); <u>Singh v. Ashcroft</u>, 80 Fed. Appx. 320 (5th Cir. 2003) (unpublished) (same);[27] <u>Malm v. I.N.S.</u>, 16 Fed. Appx. 197 (4th Cir 2001) (unpublished) (same).[28]

While the Petitioner states a claim within this Court's jurisdiction, the claim fails to state a claim for habeas relief because it is entirely permissible to place reasonable procedural limitations on the exercise of rights under the CAT. <u>Foroglou</u>, <u>supra</u>.

## IV.    The Instant Action Does Not Implicate Customary International Law

In this case, there is no need to resort to international customary law. Resort may be had to such law "[w]here there is no treaty, and no controlling executive or legislative act or judicial decision." <u>The Paquete Habana</u>, 175 U.S. 677, 700 (1900). The Petitioner's claim is governed by a complex statutory and regulatory scheme. <u>See</u> <u>Wang v. Ashcroft</u>, 320 F.3d 130, 142 n.18 (2nd Cir. 2003) ("We need not consider whether returning Wang to China impinges upon any norms of customary international law because, in the instant case, the issue is governed by the treaties and legislative and regulatory enactments of the United States.").

To imply from customary international law, an unwaivable right to a hearing under the CAT would disrupt, and in many instances, utterly frustrate, this complex scheme. An alien

---

[27] Unpublished opinions of the Fifth Circuit may be cited as persuasive authority. Fifth Circuit Rule 47.5.4.

[28] Unpublished opinions of the Fourth Circuit may be cited as persuasive authority. Fourth Circuit Rule 36(c).

19

subject to deportation could pursue other claims, appeal to the Circuit Court, reserving the CAT claims until removal was imminent, and pursue an eleventh hour claims of CAT violations in habeas. Such filings would quickly become the norm, rather than the exception.[29] Moreover, there simply is no basis for resort to such law in the face of a comprehensive legislative scheme. "When Congress plainly marks a path, courts are seldom free to leave it and roam at will in the surrounding veldt." Baez v. INS, 41 F.3d 19, 24 (1st Cir. 1994).

### Conclusion

For the reasons stated herein, the Petitioner's claims should be dismissed.

> Respectfully submitted,
> MICHAEL J. SULLIVAN
> United States Attorney
> 
> By:  /s/ Mark J. Grady
> MARK J. GRADY
> Assistant U.S. Attorney
> U.S. Attorney's Office
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA  02210
> Tel. No. (617) 748-3136

### Certificate of Service

I hereby certify that a true copy of the above document was served upon counsel for the Petitioner by mail on this 12th day of July 2004.

> /s/ Mark J. Grady
> Mark J. Grady
> Assistant U.S. Attorney

---

[29] It would be unwise to rely upon the veracity of all removable aliens. See, e.g., Betouche, 357 F.3d at 150 ("Since a delay in deportation may itself constitute a substantial boon to an alien already subject to a final deportation order, there exists a significant prospect that entirely meritless and/or collusive . . . claims may be filed for purely dilatory purposes."). Indeed, it is not difficult to imagine scenarios where meritless, eleventh hour CAT filings could mandate release of detained aliens as habeas proceedings are drawn out beyond the time permitted for removal. See Zadvydas v. Davis, 533 U.S. 678 (2001).