## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
## FALLS CHURCH, VIRGINIA

In the Matter of         ]
Juliet Nalubwama Kaweesa   ]     **IN REMOVAL PROCEEDINGS**
A75 835 579           ]

### BRIEF OF THE RESPONDENT

### I. FACTS:

The Respondent, Juliet Nalubwama Kaweesa (hereinafter Ms. Kaweesa") is a native and a citizen of Uganda. (Application for Asylum, ¶¶ 13,14.) Ms Kaweesa arrived in the United States on August 2, 1994 as a tourist. (Application for Asylum, ¶17(f), (g), Exhibit 2 in the Record.) While in this country, Ms. Kaweesa applied for asylum.

In her asylum application Ms. Kaweesa stated that she was afraid to return to Uganda where she was raped, tortured, and detained without a trial. She also stated that her husband and older brother were murdered because of their involvement in political activity.

On February 22, 1999, Ms. Kaweesa's application for asylum was denied by the Immigration and Naturalization Service's (hereinafter "the Service") asylum office. Ms. Kaweesa was then served with the Notice to Appear and was placed in removal proceedings. The NTA informed Ms. Kaweesa that the case was scheduled for a master calendar hearing in the immigration court on May 13, 1999 at 1:00.

By sheer mistake, Ms. Kaweesa misread the date. She understood the notice to say that she must appear in the court on May 17 instead of May 13, 1999. To attend the hearing, Ms. Kaweesa arranged for a off on May 17 with her employer.

On May 15, 1999, Ms. Kaweesa received a letter from the Immigration Court informing her that she was ordered to be removed from the US because she failed to attend the hearing on

May 13, 1999. As soon as she realized what had happened, Ms. Kaweesa, *pro se,* went to the Immigration Court and submitted a letter to Judge Joyce on May 19, 1999.

In her letter, of that date, Ms Kaweesa explained that she was absent for her hearing because she inadvertently misread the dates on the notice and apologized for her absence. Ms. Kaweesa asked Judge Joyce to reopen her case. On June 9, 1999, Ms. Kaweesa, through her counsel, supplemented her Motion to Reopen with her affidavit. Her Motion to Reopen was unopposed by the Service.

On June 23, 1993, the Motion to Reopen was denied. In his decision Judge Joyce acknowledged that Ms. Kaweesa's "error was not incomprehensible," he held that she failed to demonstrate that her absence during the hearing resulted from exceptional circumstances beyond her control." (Dec. at 2.)

Ms. Kaweesa files this appeal from the denial of her Motion to Reopen. Ms Kaweesa respectfully asks this Board to rescind the removal order entered in absentia and to reopen removal proceedings in order to allow her to request asylum before the immigration judge.

## II.    ARGUMENT

### A.    THE IN ABSENTIA ORDER SHOULD BE RESCINDED BECAUSE MS. KAWEESA DEMONSTRATED THAT THE TOTALITY OF THE CIRCUMSTANCES PERTAINING TO HER CASE JUSTIFY FINDING EXCEPTIONAL CIRCUMSTANCES TO EXCUSE HER FAILURE TO APPEAR FOR HER HEARING IN THE IMMIGRATION COURT.

Under the statute, an alien who fails to appear at a removal hearing may be ordered deported *in absentia.* INA §240(a)(5)(A). Such an order can be rescinded only upon filing a motion to reopen. The burden is on the alien either to demonstrate that the alien did not receive a NTA or Notice of Removal Hearing or to establish that failure to appear resulted form "exceptional circumstances." INA §240(b)(5)(C)(i). In order to demonstrate that the failure to appear was due to exceptional circumstances, a motion to reopen must be filed within 180 days after the date of the order of removal. Id.

The statute defines "exceptional circumstances " as "circumstances . . . beyond the control of the alien." INA §240(e)(1). These include "serious illness of the alien or death of the spouse, child or parent, but not including less compelling circumstances." Id. In determining whether the exceptional circumstances exist, the "'totality of circumstances' pertaining to the alien's case must be considered." In re B-A-S, Int. Dec. 3350 at 2, (B.I.A. 1998), *citing* Matter of W-F-, Int. Dec. 3288 at 10 (B.I.A. 1996). In deciding the validity of a claim of exceptional circumstances, the Board considers supporting documentary evidence, the alien's efforts in contacting the court, and the alien's promptness in filing of a motion to reopen. In Re B-A-S-, at 3-4.

In In Re B-A-S, the respondent missed his hearing because of a foot injury and was ordered deported *in absentia.* After his motion to reopen the deportation proceedings was denied, he appealed to the BIA. The Board affirmed the decision of the immigration judge. In Re B-A-S-, at 1.

The Board opined that the respondent's claim was undermined by his actions. Specifically, the Board noted that the respondent presented conflicting statements concerning the circumstances surrounding his injury. In re B-A-S-, at 3 . . . . In addition, the Board found that the respondent did not provide sufficient documentary evidence to support his claim. Id. The Board also emphasized that the respondent made no effort to contact the immigration court immediately in order to explain the reasons for his absence. Id. Finally, the Board stressed that the respondent did not file a motion to reopen until more than 3 months after the in absentia hearing. Id. at 4.

The Board especially noted that the respondent's "failure to promptly contact the Immigration Court, coupled with his failure to offer reasons for not contacting the court as soon as possible, demonstrate that the respondent did not exercise sufficient diligence in attempting to avoid an in absentia deportation order." Id. at 4. The Board then stressed that "[a]lthough diligence is not a statutory requirement, we find that this lack of diligence is a factor that undercuts the respondent's claim. Id.

3

The facts of instant case are strikingly different. Unlike the respondent in In Re B-A-S-, Ms. Kaweesa demonstrated due diligence in trying to remedy the harsh consequences of the removal order entered *in absentia*. Her actions are the best proof of the sincerity of her claim that her absence during the proceeding was a result of an unfortunate mistake.

In contrast to the respondent in In re B-A-S, who made no attempt to contact the immigration court after the *in absentia* order was issued, Ms. Kaweesa personally went to the court in order to explain her predicament just four days after Judge Joyce issued his order. In her letter to Judge Joyce Ms. Kaweesa took responsibility for her mistake and apologized for missing her hearing. Especially important is the fact that Ms. Kaweesa attempted to correct the situation on her own even before she contacted an attorney.

Equally commendable is Ms. Kaweesa's promptness in filing a motion to reopen. It took her only four days after she learned about the *in absentia* removal order to do so. It may be hard to believe but Ms. Kaweesa submitted her motion unaware of how heavy was her burden in this matter. This is in striking contrast with the respondent in In re B-A-S, where the respondent procrastinated for three months before filing his motion .

Ms. Kaweesa's actions in attempting to reverse the catastrophic consequences of her mistake deserve favorable consideration. Although the reason for her missing her hearing may not by itself fit within the statutory definition of the "exceptional circumstances," the totality of the circumstances cries for finding exceptional circumstances in this case. Such a finding is especially warranted in light of the fact that Ms Kaweesa faces a return to a country were she was raped, tortured, and detained without a trial and were her husband and brother were murdered by government soldiers.

**B.    SINCE THE STATUTE DOES NOT BAR CONSIDERATION OR GRANTING OF AN ASYLUM CLAIM DESPITE THE ENTRY OF AN IN ABSENTIA REMOVAL ORDER, THE BOARD SHOULD REOPEN THE PROCEEDINGS TO ALLOW MS. KAWEESA TO PRESENT HER ASYLUM CLAIM BEFORE THE IMMIGRATION JUDGE.**

Although the section of 240(b)(7) of the Immigration and Nationality Act (hereinafter "the Act") expressly restricts eligibility for certain forms of discretionary relief when an alien is subject to *in absentia* order of removal, such a preclusion does not apply to consideration and granting applications for asylum. Likewise, the section 208(d)(5)(A)(v) of the Act, does not mandate the dismissal of the asylum application where the applicant fails to appear for a hearing "without prior authorization or in the absence of exceptional circumstances." Instead, the statute provides that where the appellant failed to appear for a hearing "the application may be dismissed or the applicant **may** be otherwise sanctioned for such failure." INA §208(d)(5)(A)(v)(emphasis added).

Such usage of the permissive "may" instead of mandatory "shall" is not a coincidence. It illustrates the Congressional concern and deference toward "domestic and international obligations not to expel and return an individual whose life or liberty would be threatened or endangered in his or her home country." In Re B-A-S-, Int. Dec. 3350 at 10, (Resenberg, dissenting) *citing* Matter of Q-T-M-T-, Int. Dec. 3300 (B.I.A. 1996).

In conformity with the Congressional intent, the Board is not precluded from affording Ms. Kaweesa an opportunity to present her asylum claim to the immigration court. The allegations presented by Ms. Kaweesa are serious enough so that the consequences which she may suffer if she is deported to Uganda should not be ignored without a hearing. Such action by the Board would be both prudent and warranted in this case.

### III.    CONCLUSION

The totality of circumstances of Mr. Kaweesa's case, and especially her diligence in attempting to remedy the consequences of the in absentia removal order, warrant finding of "exceptional circumstances" for her absence at her hearing. Ms. Kaweesa asks this Board to rescind the in absentia removal order and reopen the proceeding in order to allow her to present her asylum claim before the immigration court. Such a determination is especially warranted in light of Ms. Kaweesa's claim that in Uganda she was raped and tortured by government soldiers

as well as that her husband and brother were murdered because of their involvement in political activities. The denial of her motion by this Board could result in disastrous consequences to her.

Dated: September 17, 1999                    Juliet Kaweesa

By her attorney
Daniel F. Cashman
Gelerman, Cashman & Donahue
270 Bridge Street
Dedham, MA 02026
Tel: (781) 329-8300
BBO #077900


On the Brief: Igor Freyman