**Affidavit of Juliette Kaweesa**

I, Juliette N. Kaweesa A75 835 579, date of birth 12/2/1960, currently residing at the Bristol County House of Correction, North Dartmouth, MA, make this statement, under the penalties and pains of perjury, in support of my request for release on an Order of Supervision. I believe that I am not a flight risk and do not pose any danger to the community for the following reasons:

1. I am a native and citizen of Uganda by my birth in Kampala Uganda on December 2, 1960. I entered the United States on August 2, 1994 on a B visa. I later filed for asylum *pro se*. My request for asylum was referred to an Immigration Judge and was scheduled for a Master Calendar hearing on May 13, 1999. Unfortunately, I mistakenly believed that my hearing was scheduled for May 17, 1999. I even requested the day off from work so I could attend. When I received the ruling from the Judge that stated that I had missed my hearing I immediately went to the Immigration Court in Boston and asked what I should do. The clerk explained that I needed to file a Motion to Reopen. I filed a Motion to Reopen *pro se* on May 15, 1999. Later I hired a private attorney who helped me amend my Motion. When my Motion to Reopen was denied I appealed the decision, again with the help of my attorney, to the Board of Immigration Appeals. The BIA affirmed the decision of the Immigration Judge on May 6, 2002.

2. I currently have a case pending before the Board of Immigration Appeals. I have filed a Motion to Reopen based on changed circumstances in my native country. Please see the

2

5. Since arriving in the United States I have continued my ministry through preaching and singing at Christian churches in the Boston area. Please see the attached letters attesting to my ties to the community and good moral character.

6. I have two minor children who are included in my asylum claim. I have been separated from them since I was detained in June. My children need me. Although they have the support of the church communities I have been working with, it is very important that we be together during these stressful times.

7. I do not pose a threat to the community. In fact I can honestly state that I have been an asset to every community I have been a part of, even here in detention. I have never been arrested for any crime and do not have a criminal record in the United States or any other country. I have been active in community organizations and churches in Waltham and Lowell. When I first came to the Bristol County House of Corrections, I realized that many of the women here were deeply depressed about their situations. I have organized the women for daily prayer sessions where I lead them in singing, prayer and bible study. Many of them have told me that I have given them a little bit of hope.

8. I believe that I am not a flight risk due to the fact that I have never attempted to flee the Immigration and Naturalization Service or the Department of Homeland Security. I have always provided my current address and have always been truthful in everything I have told INS and/or DHS officials.

9. I am also not a flight risk because I live in the hope that my case will be reopened by the Board of Immigration Appeals. Due to a very unfortunate mistake on my part, my asylum claim was never heard by a judge. I do fear for my life and the lives of my minor children if we are returned to Uganda. My Motion to Reopen is currently pending before the Board of Immigration Appeals. I live in the hope that my case will be reopened and I will finally have my "day in court", I realize that any attempt to flee or evade the Department of Homeland Security would jeopardize this. I have too much at stake and believe too strongly in my asylum claim to attempt to flee or otherwise evade the Department of Homeland Security if released on an Order of Supervision.


Respectfully Submitted,

_____
Juliette Kaweesa

\_7/9/2003_____
Date

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOSTON, MASSACHUSETS

In the Matter of )
Juliet N. Kaweesa )
A75 835 579 )
_____ )

## EXHIBIT LIST

1. Declaration of Petitioner, Juliet N. Kaweesa

2. Copy of photograph of Fred Kaweesa, taken in August or September 2001

3. Copy of letter from Father John Musisi dated February 12, 2003

4. Letter from Rev, John Baker Katende, Global Evangelical Church, Waltham, MA

5. Letter from Rev. Darius Twa, All Nations Christian Center, Lowell, MA

6. UGANDA: Security agents Accused of torture, IRINNews.org, April 11, 2003

7. U.S. Department of State, Uganda, Country Reports on Human Rights Practices, March 31, 2003.

## **Declaration of Juliette Kaweesa**

I, Juliette Kaweesa, A 075 835 579, am requesting that my Removal Proceedings be reopened so I may apply for asylum, withholding of removal, or withholding of removal under Article 3 of the Convention Against Torture because I fear I will be tortured or killed if I return to my native Uganda. In support of this application, under the penalties and pains of perjury, I state the following:

1. I was active in several Christian ministries in Uganda. I worked mainly with women and children and was well known in Kampala for my preaching and music ministry. My husband, Stephen Kaweesa, was the pastor of the Heritage Revived Church in Uganda until he was murdered by government security officers in 1994. After my husband's murder I remained involved in several other churches although the Heritage Revived Church ceased to exist due to the fear and apprehension of the members.

2. My ministry was a public one. I often traveled with a portable microphone to preach and sing and would lead prayer groups. I focused on ministering to women and their children and became involved with a group called Human Rights Africa because they promoted respect for women, a message I was trying to bring to the women themselves through my ministry.

3. In 1994 I was detained by government security officers in Kampala. While in detention I was questioned about my activities with women and children. Until this time I did not consider my views to be political, only religious, in nature. While I was detained I was interrogated, beaten and raped by at least four men.

4. Upon my release from detention I obtained a B visa to come to the United States to attend a religious conference. I arrived in the US on August 2, 1994. I filed my application for asylum *pro se.*

5. I was sent a notice that my Master Calendar hearing was scheduled for May 13, 1999 but somehow got the date wrong in my head. When I realized my mistake on May 15, 1999 I went straight to the Immigration Court in Boston and asked to speak to the judge. The clerk told me that I could not speak to the judge but I could file a Motion to Reopen. I submitted a handwritten Motion to Reopen the same day and later contacted an attorney who helped me to amend my Motion and later to appeal my case to the BIA.

6. Since arriving in the United States I have kept in contact with my son Fred. Sometime in 2001, I am not sure of the exact date, a former neighbor of mine called from Uganda to tell me that Fred was in the hospital, that he had been badly beaten and that they did not know if my son would live. He said he heard Fred screaming and when he went to the house to see what happened Fred was bleeding on the floor and could not speak. The neighbor brought Fred to the hospital. About one week after this phone call Fred called me to tell me what had happened. He said several men in regular clothes driving an army truck had come to the house looking for me. He said there were rumors that I had returned to Uganda. When he said that he didn't know where I was they began to beat him. Fred remained in the hospital for three weeks. I asked him to send me a picture of his injuries so I could know just how bad it was since I could not be there with him. He sent me a photo of the injuries to his face and head. Although I do not know the exact date of this incident I am trying to get hospital records or other documentation from Fred. Fred is difficult to contact sometimes because he is

moving around out of fear. The last few time I have spoken with him he told me that the security men are still after him and questioning him about me.

7. I fear returning to Uganda because I have been tortured in the past due to my religious beliefs and what the government perceived as my political activities, my husband and brother were both murdered, and my son has recently been severely beaten. All of these abuses were committed by government security forces. After speaking to my son Fred and seeing the awful picture he sent to me, I am more concerned than ever for my safety if I return to Uganda. I am afraid I will be tortured again or even killed.

8. If my case is reopened I can submit further documentation of the claims I have made in this declaration. I continued my preaching and music ministry in the United States through churches here who knew of my reputation in Uganda. The Pastors and Church members here have told me that they would be more than happy to submit affidavits to corroborate my claims.

Respectfully Submitted,

X _Juliette Kaweesa_ (signature)

Juliette Kaweesa